## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CAROLINE HAMILTON, ET AL | ) | |
| Plaintiffs, | ) | Case No. 2:05-cv-110 |
| v. | ) | |
| | ) | |
| CHARLES E. ALLEN, ET AL | ) | |
| Defendants. | ) | |

## ORDER

AND NOW, this _____ day of _____, 2005, upon consideration of The Gartmore Defendants' Motion to Dismiss (the "Motion"), and the response thereto, it is hereby ORDERED and DECREED as follows:

1. The Motion is GRANTED.

2. The Complaint is hereby DISMISSED with PREJUDICE.

3. The Clerk of the Court shall mark this matter as CLOSED.


_____
Judge Pratter

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| CAROLINE HAMILTON, ET AL <br><br> Plaintiffs, <br><br> v. <br><br> CHARLES E. ALLEN, ET AL <br><br> Defendants. | ) <br> ) <br> ) <br> )     Case No. 2:05-cv-110 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## THE GARTMORE DEFENDANTS' MOTION TO DISMISS

Defendants Charles E. Allen, Paula H.J. Cholmondeley, C. Brent DeVore, Robert M. Duncan, Barbara L. Hennigar, Thomas J. Kerr, IV, Douglas F. Kridler, David C. Wetmore, Paul J. Hondros, Arden L. Shisler, Gerald J. Holland, Eric E. Miller, Gartmore Mutual Funds, Inc., Gartmore Mutual Fund Capital Trust, NorthPointe Capital LLC, Gartmore Separate Accounts LLC, and Gartmore Global Partners (the "Gartmore Defendants"), hereby move this Honorable Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for the entry of an Order dismissing the Complaint with

prejudice.  Grounds supporting this Motion are set forth in the accompanying

Memorandum.

Respectfully Submitted,

Robert C. Heim
Michael S. Doluisio
Scott A. Thompson
Kristina C. Evans
Dechert LLP
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, PA 19103
(215) 994-4000

Attorneys for the Gartmore Defendants

Dated: March 24, 2005

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CAROLINE HAMILTON, ET AL** | ) | |
| **Plaintiffs,** | ) | **Case No. 2:05-cv-110** |
| **v.** | ) | |
| | ) | |
| **CHARLES E. ALLEN, ET AL** | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF THE GARTMORE DEFENDANTS' MOTION TO DISMISS

Robert C. Heim
Michael S. Doluisio
Scott A. Thompson
Kristina C. Evans
Dechert LLP
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, PA  19103-2793
(215) 994-4000

Attorneys for the Gartmore
Defendants

Dated:  March 24, 2005

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ........................................................................................................... 1

FACTS ........................................................................................................................... 2

ARGUMENT ................................................................................................................. 4

I.    COUNTS I, II, III, AND V SHOULD BE DISMISSED BECAUSE THE
CLAIMS CANNOT BE BROUGHT AS DIRECT SHAREHOLDER CLAIMS ............ 5

    A.    Because the Alleged Injury was to the Funds, the Claims can only be
Brought Derivatively ........................................................................................... 5

    B.    Plaintiffs' Claims Fail Because Plaintiffs have not Complied with Fed. R.
Civ. P. 23.1 .......................................................................................................... 9

II.    COUNT III SHOULD BE DISMISSED BECAUSE THERE IS NO PRIVATE
RIGHT OF ACTION UNDER SECTION 36(a) OF THE ICA .................................. 10

    A.    Under Recent Supreme Court Precedent, Courts Must Focus on Statutory
Text and Structure in Determining Whether Congress Intended to Confer a
Private Right of Action ..................................................................................... 10

    B.    The Language and Structure of Section 36(a) Manifest No Congressional
Intent to Confer a Private Right of Action ........................................................ 13

III.    COUNT IV SHOULD BE DISMISSED BECAUSE PLAINTIFFS FAIL TO
STATE A CLAIM UNDER SECTION 36(b) OF THE ICA ...................................... 17

    A.    Count IV Should be Dismissed Because Plaintiffs do not and Cannot
Plead a Claim for Excessive Advisory Fees ..................................................... 17

    B.    Plaintiffs Fail to State a Claim Under Section 36(b) Because They do not
Seek to Recover on Behalf of the Funds ........................................................... 19

    C.    Plaintiffs Cannot Bring a Section 36(b) Claim against Gartmore Mutual
Funds, Inc. ......................................................................................................... 20

IV.    COUNT V FAILS TO STATE A CLAIM AND SHOULD BE DISMISSED .............. 20

    A.    Plaintiffs Have no Standing to Sue Under Section 47(b) ................................... 21

    B.    Plaintiffs' Claim Under Section 47(b) Fails Because they Cannot Establish
an Underlying Violation of the ICA .................................................................. 22

C.      Plaintiffs' Claim Fails Because they do not Allege that the Advisory
        Agreements, either on their face, or as Necessarily Performed, Violated
        the ICA ............................................................................................................ 22

V.      PLAINTIFFS LACK STANDING TO SUE ................................................................... 24

CONCLUSION ............................................................................................................................ 27

## TABLE OF AUTHORITIES

Page(s)

### FEDERAL CASES

Alexander v. Sandoval,
    532 U.S. 275 (2001) ................................................................................ 12-18

Allen v. Wright,
    468 U.S. 737 (1984) ...................................................................................26

Ash v. Int'l Bus. Mach.,
    353 F.2d 491 (3d Cir. 1965) ........................................................................9

Benak v. Alliance Capital Mgmt. L.P.,
    No. Civ. A. 01-5734, 2004 WL 1459249 (D.N.J. Feb. 9, 2004) ......................................19

Blatt v. Merrill Lynch, Pierce, Fenner & Smith Inc.,
    916 F. Supp. 1343 (D.N.J. 1996) ................................................................23

Blum v. Yaretsky,
    457 U.S. 991 (1982) ...................................................................................27

Chamberlain v. Aberdeen Asset Mgmt. Ltd.,
    No. 02 CV 5870(SJ), 2005 WL 195520 (E.D.N.Y. Jan. 21, 2005) ............................ 16-18

Clark v. Nevis Capital Mgmt., LLC,
    04 Civ. 2702, 2005 WL 488641 (S.D.N.Y. Mar. 2, 2005) ......................................... 22-23

Cohen v. Citibank, N.A.,
    954 F. Supp. 621 (S.D.N.Y. 1996) ...............................................................22

Corr. Servs. Corp. v. Malesko,
    534 U.S. 61 (2001) ...................................................................................12

Cushman v. Trans Union Corp.,
    115 F.3d 220 (3d Cir. 1997) ......................................................................24

DM Research v. College of Am. Pathologists,
    170 F.3d 53 (1st Cir. 1999) ..........................................................................5

Daily Income Fund, Inc. v. Fox,
    464 U.S. 523 (1984) ...............................................................................6, 20

Davis v. DCB Fin. Corp.,
    259 F. Supp. 2d 664 (S.D. Ohio 2003) .................................................................10

Drasner v. Thomson McKinnon Secs., Inc.,
    433 F. Supp. 485 (S.D.N.Y. 1977) ......................................................................25

In re Eaton Vance Corp. Sec. Litig.,
    219 F.R.D. 38 (D. Mass. 2003).....................................................................27-28

GFL Advantage Fund, Ltd. v. Colkitt,
    272 F.3d 189 (3d Cir. 2001)........................................................................24-25

Gonzaga Univ. v. Doe,
    536 U.S. 273 (2002) ...............................................................12-13, 15-16

Green v. Fund Asset Mgmt.,
    286 F.3d 682 (3d Cir. 2002)....................................................... 18-19, 21

Green v. Fund Asset Mgmt., L.P.,
    245 F.3d 214 (3d Cir. 2001)............................................................. 9-10

Green v. Nuveen Advisory Corp.,
    295 F.3d 738 (7th Cir. 2002) .................................................................19

Grove v. First Nat'l Bank of Herminie,
    489 F.2d 512 (3d Cir. 1974)....................................................................25

Hurley v. FDIC,
    719 F. Supp. 27 (D. Mass. 1989) ...........................................................8

Kamen v. Kemper Fin. Servs., Inc.,
    590 U.S. 90 (1991).............................................................................6, 10

Karahalios v. Nat'l Fed'n of Fed. Employees, Local 1263,
    489 U.S. 527 (1989)...............................................................................16

Kauffman v. Dreyfus Fund, Inc.,
    434 F.2d 727 (3d Cir. 1970)..........................................................8-9, 26-28

Krantz v. Prudential Inv. Fund Mgmt. LLC,
    305 F.3d 140 (3d Cir. 2002)................................................................2, 19

<u>Krouner v. Am. Heritage Fund, Inc.</u>,
   94 Civ. 7213, 1997 U.S. Dist. LEXIS 11445 (S.D.N.Y. Aug. 6, 1997) ..............................9

<u>Lessler v. Little</u>,
   857 F.2d 866 (1st Cir. 1988) ...........................................................................................22

<u>Marcus v. Putnam</u>,
   60 F.R.D. 441 (D. Mass. 1973) .........................................................................................9

<u>Migdal v. Rowe Price-Fleming Int'l Inc.</u>,
   248 F.2d 321 (4th Cir. 2001) .......................................................................................5, 19

<u>Millenco L.P. v. VC Advisors, Inc.</u>,
   Civ. A. No. 02-142-JJF, 2002 U.S. Dist. LEXIS 19512 (D. Del. Aug. 21, 2002).............20

<u>Mills v. Elec. Auto-Lite Co.</u>,
   396 U.S. 375 (1970)................................................................................................22, 24

<u>Morse v. Lower Merion Sch. Dist.</u>,
   132 F.3d 902 (3d Cir. 1997)...............................................................................................2

<u>O'Shea v. Littleton</u>,
   414 U.S. 488 (1974)........................................................................................................27

<u>Olmsted v. Pruco Life Insurance Co. of New Jersey</u>,
   283 F.3d 429 (2d Cir. 2002).....................................................................................13-18

<u>Prado-Steinman v. Bush</u>,
   221 F.3d 1266 (11th Cir. 2000) ......................................................................................26

<u>Reg'l Props., Inc. v. Fin. and Real Estate Consulting Co.</u>,
   678 F.2d 552 (5th Cir. 1982) ..........................................................................................25

<u>Rohrbaugh v. Inv. Co. Inst.</u>,
   CIV. A. No. 00-1237, 2002 WL 31100821 (D.D.C. July 2, 2002)....................................19

<u>Russello v. United States</u>,
   464 U.S. 16 (1983).........................................................................................................17

<u>Sabree v. Richman</u>,
   367 F.3d 180 (3d Cir. 2004)......................................................................................12, 15

<u>Simon v. E. Kentucky Welfare Rights Org.</u>,
   426 U.S. 26 (1976).........................................................................................................26

Slomiak v. Bear Stearns & Co.,
    597 F. Supp. 676 (S.D.N.Y. 1984) ..................................................25

Somogyi v. Butler,,
    518 F. Supp. 970 (D.N.J. 1981) ....................................................23

Stonehill v. Sec. Nat'l Bank,
    68 F.R.D. 24 (S.D.N.Y. 1975) ......................................................25

Strougo v. Bassini,
    282 F.3d 162 (2d Cir. 2002)............................................................9

Tarlov v. Paine Webber Cashfund, Inc.,
    559 F. Supp. 429 (D. Conn. 1983) ................................................23

Three Rivers Ctr. for Indep. Living, Inc. v. Hous. Auth. of Pittsburgh,
    382 F.3d 412 (3d Cir. 2004)....................................................12, 17

Touche Ross & Co. v. Redington,
    442 U.S. 560 (1979).............................................................11, 13

Transamerica Mtg. Advisors, Inc. v. Lewis,
    444 U.S. 11 (1979).....................................................................13

In re Value Line Special Situation Fund Litig,
    No. M 19-103(CHT), 1974 WL 412 (S.D.N.Y. June 13, 1974) ........27

Varnado v. Trans Union LLC,
    No. 03 C 6937, 2004 WL 1093488 (N.D. Ill. Apr. 29, 2004)............5

West Allis Mem'l Hosp. v. Bowen,
    852 F.2d 251 (7th Cir. 1988) ......................................................15

Williams v. Bank One Corp.,
    CIV. A. No. 03-8561, 2003 WL 22964376 (N.D. Ill. Dec. 15, 2003)..............27

Williams v. Nat'l Sch. of Health Tech.,
    836 F. Supp. 273 (E.D. Pa. 1993) ...............................................16

## STATE CASES

Adair v. Wozniak,
    492 N.E.2d 426 (Ohio 1986)............................................................8

Carlson v. Rabkin,
    789 N.E.2d 1122 (Ohio Ct. App. 2003) ..................................................... 7-8, 10

Crosby v. Beam,
    548 N.E.2d 217 (Ohio 1989) ....................................................................7

Grand Council of Ohio v. Owens,
    620 N.E.2d 234 (Ohio Ct. App. 1993) ......................................................7

Jackson v. Stuhlfire,
    547 N.E.2d 1146 (Mass. Ct. App. 1990) ...................................................8

Mun. Light Co. of Ashburnham v. Commonwealth,
    608 N.E.2d 743 (Mass. Ct. App. 1993) .....................................................7

Pupecki v. James Madison Corp.,
    382 N.E.2d 1030 (Mass. 1978) ........................................................... 10-11

Weston v. Weston Paper & Mfg. Co.,
    658 N.E.2d 1058 (Ohio 1996) ...................................................................8

## DOCKETED CASES

Binford v. Brennan et al.,
    Case No. 05-0112 (E.D. Pa.) .....................................................................5

## FEDERAL STATUTES

Fed. R. Civ. P. 23.1 ................................................................... 3, 10-11, 27

Pub. L. No. 91-547, 84 Stat. 113 (1970) .........................................................17

15 U.S.C. § 78cc(b) ...................................................................................22, 24

15 U.S.C. § 80a-35(a) ............................................................................ 11, 15-17

15 U.S.C. § 80a-35(b) ............................................................................17, 19, 21

15 U.S.C. § 80a-46(b) ................................................................................ 21-24

15 U.S.C. § 80b-15 ........................................................................................22

## INTRODUCTION

This is one of over forty virtually identical lawsuits filed against nearly every major mutual fund family by some of these same counsel.  In this case, plaintiffs allege that defendants breached their duties by failing to cause 38 unidentified Gartmore mutual funds to participate in class action settlements involving shares held by those funds.  For the various reasons set forth herein, plaintiffs' Complaint should be dismissed.

An initial problem with plaintiffs' Complaint is that it is virtually devoid of facts.  The two plaintiffs allege that they each owned shares in one Gartmore mutual fund, but they fail to identify the fund.  They also fail to allege that they owned the shares during a time period when such a fund was allegedly entitled to participate in a class action settlement.  In addition, plaintiffs allege that 38 Gartmore mutual funds owned securities that were the subject of class action settlements, but fail to identify:  (1) the funds; (2) a single such security that was, in fact, owned by a particular fund; or (3) a particular settlement in which the funds, in fact, failed to participate.[1]  Indeed, as plaintiffs themselves all but concede, cases like this one appear to have been filed across the country in the hopes of discovering if there are facts that might support a claim, by some person or entity, against some fund and its fiduciaries.

Putting aside plaintiffs' failure to adequately investigate their claims, the Complaint should be dismissed for a host of legal reasons.  First and foremost, plaintiffs'

---

[1]  "A court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss."  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  Indeed, while Rule 8's pleading requirements "are very liberal, more detail is often required than the bald statement by plaintiff that he has a valid claim of some type against defendant.'"  Krantz v. Prudential Inv. Fund Mgmt. LLC, 305 F.3d 140, 142-43 (3d Cir. 2002).

Complaint is deficient because any claims relating to the funds' alleged failure to participate in class settlements belong to the funds and not to fund shareholders. Therefore, such claims can be brought only by the funds themselves or via a shareholder derivative suit. Here, plaintiffs neither plead their claims derivatively nor comply with Federal Rule of Civil Procedure 23.1. Accordingly, their claims fail.

Moreover, plaintiffs do not state a claim under the Investment Company Act of 1940 ("ICA"). Section 36(a) of the ICA by its express terms envisions SEC enforcement; it does not allow for private rights of action. Section 36(b) relates only to claims of excessive advisory fees -- an issue wholly unrelated to plaintiffs' allegations. And, Section 47(b) relates only to contracts written in violation of the ICA -- not, as alleged here, to general claims of breach of fiduciary duty. Thus, plaintiffs' ICA claims fail.

Finally, plaintiffs lack standing to sue. A shareholder can only sue a mutual fund in which he owns stock. Here, plaintiffs have asserted claims regarding 38 unidentified Gartmore mutual funds, but fail to identify a single fund in which they owned stock. Worse yet, plaintiffs assert claims regarding these 38 funds, but candidly admit that they did not own stock in all such funds. Accordingly, plaintiffs lack standing to bring the Complaint they have filed.

## FACTS

Plaintiffs Caroline Hamilton and James Jacobs ("plaintiffs") purport to bring this action on behalf of themselves and a putative nationwide class of all persons owning stock in 38 Gartmore mutual funds (the "Funds") between January 10, 2002 and January 10, 2005. See Complaint ("Compl.") ¶¶ 16, 23. Other than alleging that they owned "one of the Funds,"

plaintiffs provide no information regarding their investments. Id. ¶ 10. Significantly, they do not identify either the Fund in which they owned shares or the dates of ownership.

Plaintiffs allege that during the putative class period "hundreds of securities class action cases were settled." Id. ¶ 23. Plaintiffs allege that the Funds were members of these settlement classes "by virtue of the Funds owning the securities against which the suits were brought," but that the Funds failed to participate in the settlements. Id. ¶ 5. As a result, settlement moneys owed to the Funds allegedly "have gone unclaimed." Id. In particular, plaintiffs allege, upon information and belief, that the Funds may have failed to file "proofs of claim" requesting settlement proceeds in 136 class settlements. Id. ¶ 24 (listing class settlements).

Plaintiffs have sued 18 separate defendants, alleging that each defendant failed to ensure that the Funds filed the proofs of claim. Specifically, plaintiffs have sued: (1) Gartmore Mutual Fund Capital Trust, NorthPointe Capital LLC, Gartmore Separate Accounts LLC and Gartmore Global Partners (the "Advisor Defendants"); (2) twelve individuals who they incorrectly allege were members of the Funds' Board of Directors (the "Trustee Defendants"); and (3) Gartmore Mutual Funds, Inc., as the "ultimate parent" of certain of the Advisor Defendants (the "Parent Company Defendant"). Id. ¶¶ 11, 12, 13(a), (b), (d), (e) (collectively, the "Gartmore Defendants").[2] In actuality, two of the twelve individuals plaintiffs name are not "Fund directors." (In fact, the investment companies here are organized as business trusts; they therefore have "trustees," not "directors.") Finally, Gartmore Mutual Funds, Inc. does not exist.

---

[2]    Plaintiffs have also sued Fund Asset Management, L.P. Id. ¶13(c). Fund Asset Management, L.P. is not affiliated with Gartmore and is separately represented in this litigation.

The same plaintiffs attorneys who filed this Complaint have filed dozens of virtually identical lawsuits against nearly every major mutual fund family in the country. See, e.g., Complaint in <u>Binford v. Brennan et al.</u>, Case No. 05-0112 (E.D. Pa.) ("Vanguard Complaint") (attached hereto as Exhibit A). In those other complaints, plaintiffs allege, upon information and belief, that the mutual funds failed to participate in the same 136 class actions that are identified here. <u>Id</u>. ¶ 24.

Given that plaintiffs' Complaint is of the "cookie cutter" variety, it is perhaps not surprising that plaintiffs appear to have no personal knowledge regarding their claims. In fact, plaintiffs candidly admit that their claims are brought "upon information and belief that the allegations are likely to have evidentiary support and upon the representation that they will be withdrawn or corrected if reasonable opportunity for further investigation or discovery indicates insufficient evidentiary support." <u>See</u> Compl. ¶ 5. This same disclaimer appears in the other complaints plaintiffs' counsel have filed. <u>See</u> Vanguard Complaint ¶ 5.[3]

## <u>ARGUMENT</u>

Plaintiffs assert five causes of action. They allege two state law claims, for breach of fiduciary duty (Count I) and negligence (Count II). They also assert three causes of action under the ICA, for violations of Section 36(a) (Count III); Section 36(b) (Count IV)

---

[3] "A party may not file a lawsuit in order to conduct a fishing expedition based on a hunch." <u>Varnado v. Trans Union LLC</u>, No. 03 C 6937, 2004 WL 1093488, at *2 (N.D. Ill. Apr. 29, 2004) (citations omitted). As the Fourth Circuit has held, "'Conclusory allegations in a complaint, if they stand alone, are a danger sign that the plaintiff is engaged in a fishing expedition.'" <u>Migdal v. Rowe Price-Fleming Int'l Inc.</u>, 248 F.2d 321 (4th Cir. 2001) (quoting <u>DM Research v. College of Am. Pathologists</u>, 170 F.3d 53, 55 (1st Cir. 1999)).

(against the Advisor Defendants and Parent Company Defendant, only); and Section 47(b)

(Count V) (against the Advisor Defendants and Parent Company Defendant, only).  As is

discussed below, plaintiffs' allegations, even if true, fail to state a claim.  Therefore, the

Complaint should be dismissed with prejudice.

I.    **COUNTS I, II, III, AND V SHOULD BE DISMISSED BECAUSE THE CLAIMS CANNOT BE BROUGHT AS DIRECT SHAREHOLDER CLAIMS.**

A.    **Because the Alleged Injury was to the Funds, the Claims can only be Brought Derivatively.**

Plaintiffs have brought all of their claims as "direct" claims on behalf of the

putative class.  None of the claims is brought as a derivative action.  However, all of plaintiffs'

claims (other than Count IV) can only be brought derivatively because the alleged harm was to

the Funds.  Plaintiffs were injured, if at all, only indirectly to the extent the Funds themselves

allegedly had less assets.[4]  Because plaintiffs do not seek to bring a derivative action and, in any

event, do not even attempt to comply with the pleading requirements for such an action,

Counts I, II, III, and V should be dismissed.

Ohio and Massachusetts law, which govern here,[5] clearly distinguish between:

---

[4]    Count IV, alleging a violation of Section 36(b), may be brought directly.  See <u>Daily Income Fund, Inc. v. Fox</u>, 464 U.S. 523 (1984).  As is discussed below, however, that claim fails as a matter of law because, among other things, plaintiffs do not allege excessive advisory fees and fail to seek recovery on behalf of the Funds.

[5]    Whether a particular action can be brought as a direct or derivative claim is determined by the law of the state under which the fund is organized or incorporated.  See <u>Kamen v. Kemper Fin. Servs., Inc.</u>, 590 U.S. 90, 108 (1991).  During the relevant time period, Gartmore funds were issued by trusts organized under Ohio and Massachusetts law.  Although plaintiffs fail to identify the 38 funds that are at issue, for the sake of completeness, the Gartmore Defendants address both Ohio and Massachusetts law.

(1) direct claims properly asserted by injured shareholders; and (2) claims that allege harm to the corporation, which can be brought only by the corporation itself or by shareholders in a derivative action.  As the Court of Appeals of Ohio has explained:  "A shareholder's derivative action is brought by a shareholder in the name of the corporation to enforce a corporate claim. . . .  On the other hand, if the complaining shareholder is injured in a way that is *separate and distinct from an injury to the corporation*, then the complaining shareholder has a direct action."  Carlson v. Rabkin, 789 N.E.2d 1122, 1126-27 (Ohio Ct. App. 2003) (quoting Crosby v. Beam, 548 N.E.2d 217, 219 (Ohio 1989) (emphasis added)); Grand Council of Ohio v. Owens, 620 N.E.2d 234, 237-38 (Ohio Ct. App. 1993) (where "the basis of the action is a wrong to the corporation, redress must be sought in a 'derivative' action") (quoting Fletcher Cyc. Corp. § 5908 at 411-412); Mun. Light Co. of Ashburnham v. Commonwealth, 608 N.E.2d 743, 749 (Mass. Ct. App. 1993) ("[S]tockholders may not in their own names bring an action for damage to the corporation in which they hold stock; they may bring a derivative action in the name of the corporation.").

When determining whether a complaint states a derivative or direct claim, the "court looks at the nature of the alleged wrong rather than the designation used by the plaintiffs." Carlson, 789 N.E.2d at 1127 (citations omitted).  Specifically, the court must "determine if the pleadings state an injury to the plaintiff upon an individual claim as distinguished from an injury that indirectly affects shareholders or affects them as a whole." Id.; see also Grand Council, 620 N.E.2d at 237-38.

"As a general proposition, claims for breach of fiduciary duties on the part of corporate directors or officers are to be brought in derivative suits." Carlson, 789 N.E.2d at 1127

(citing Grand Council, 620 N.E.2d at 238). Such claims must be brought derivatively "because the damage that results from the fraudulent or negligent management is to the corporation and to the corporate assets and because it affects the stockholders or members only indirectly and all of them alike." Id.; see also Jackson v. Stuhlfire, 547 N.E.2d 1146 (Mass. Ct. App. 1990) ("[A] complaint alleging mismanagement or wrongdoing on the part of corporate officers or directors normally states a claim of wrong to the corporation; the action, therefore, is properly derivative.").[6]

These principles apply equally to claims against mutual funds. In a case directly on point, the Third Circuit has held that an action alleging harm to a mutual fund may not be brought as a direct shareholder claim. See Kauffman v. Dreyfus Fund, Inc., 434 F.2d 727, 732 (3d Cir. 1970). In that case, the Third Circuit affirmed the dismissal of a putative class action brought by a mutual fund shareholder, explaining:

> A stockholder of a corporation does not acquire standing to
> maintain an action in his own right, as a shareholder, when the
> alleged injury is inflicted upon the corporation and the only injury
> to the shareholder is the indirect harm which consists in the
> diminution in value of his corporate shares resulting from the

---

[6] The result is no different with regard to claims against third parties. As the Ohio Supreme Court has held: where a third party's "wrongdoing has caused direct damage to corporate worth, the cause of action accrues to the corporation, not to the shareholders, even though in an economic sense real harm may well be sustained by the shareholders as a result of reduced earnings, diminution in the value of ownership. . . ." Adair v. Wozniak, 492 N.E.2d 426, 429 (Ohio 1986); see also Weston v. Weston Paper & Mfg. Co., 658 N.E.2d 1058, 1060 (Ohio 1996) (direct claim against corporation's auditors could not proceed because plaintiffs failed to show that they "ha[d] been injured in any capacity other than in common with all other shareholders as a consequence of the wrongful actions of a third party directed towards the corporation"); Hurley v. FDIC, 719 F. Supp. 27, 30 (D. Mass. 1989) (where a "wrongdoer" has caused a "diminution of the corporation's net worth," the "corporation is the injured party and it alone may sue the wrongdoer for the damage caused").

> impairment of corporate assets. In this situation, it has been
> consistently held that the primary wrong is to the corporate body
> and, accordingly, that the shareholder, experiencing no direct
> harm, possesses no primary right to sue.

Id. (citing Ash v. Int'l Bus. Mach., 353 F.2d 491 (3d Cir. 1965)). The Third Circuit further

explained that a mutual fund shareholder is no different in this regard than other shareholders,

even though the value of a mutual fund share bears a "direct relationship to the total net assets

owned by the fund." Id. at 733. Indeed, the court explained that allowing a direct claim on that

basis:

> . . . fails properly to appreciate, or seeks to ignore, the fundamental
> tenet of corporation law which treats the corporate body as an
> entity -- indeed, as a person -- separate and distinct from those who
> own shares of its stock. . . . It is this concept that reserves for the
> corporation the right to vindicate wrongs which harm the
> corporation, injuring the shareholders only in the sense that stock
> values are imperiled.

Id. at 733; see also Green v. Fund Asset Mgmt., L.P., 245 F.3d 214, 227 n.16 (3d Cir. 2001)

(noting, in a suit by shareholders against mutual funds, their adviser and officers, that "[a]t

common law, the shareholder's suit for breach of fiduciary duty is a derivative suit"); Strougo v.

Bassini, 282 F.3d 162, 174 (2d Cir. 2002) (allegations that mutual fund shareholders were

harmed because of a depletion of fund assets is "precisely the type of injury to the corporation

that can be redressed . . . only through a suit brought on behalf of the corporation"); Krouner v.

Am. Heritage Fund, Inc., 94 Civ. 7213, 1997 U.S. Dist. LEXIS 11445, at *7-8 (S.D.N.Y. Aug. 6,

1997) (dismissing claims for breach of fiduciary duty against the fund, its advisor, officers, and

directors and noting that "a shareholder's claims for breach of fiduciary duty [must] be brought

derivatively"); Marcus v. Putnam, 60 F.R.D. 441, 443-44 (D. Mass. 1973) ("The shareholder of a

mutual fund does not attain a primary right to sue because the value of his share reflects the net asset value of the fund.").

Here, plaintiffs allege that they have been injured because the Funds failed to file proofs of claim in class settlements. But any such failure affects the shareholders "only indirectly and all of them alike." Carlson, 789 N.E. 2d at 1127. Indeed, plaintiffs allege that they were harmed only because *the Fund* failed to file proofs of claim and *the Fund* itself had less assets. See Compl. ¶¶ 24 ("the *Funds* owned shares and had valid claims in many, if not all, of the following securities class action cases"); 25 ("If the defendants had submitted Proof of Claim forms *on behalf of the Funds* in these cases and all others to which the *Funds* had valid claims, the settlement funds would have increased the total assets *held by the Funds*") (emphasis added). Thus, plaintiffs have asserted, at most, claims for injury to the Funds. Such claims cannot be brought directly by shareholders. Instead, they can be brought, if at all, only in a derivative action.

### B.   Plaintiffs' Claims Fail Because Plaintiffs have not Complied with Fed. R. Civ. P. 23.1.

To bring a derivative action, plaintiffs must comply with the requirements of Federal Rule of Civil Procedure 23.1. Specifically, plaintiffs must "allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort."[7] See Fed. R. Civ. P. 23.1. See also Davis v. DCB Fin. Corp., 259 F. Supp. 2d 664, 670 (S.D. Ohio 2003); Pupecki v. James

---

[7]      Again, the demand requirement is governed by state law. Kamen, 590 U.S. at 108.

Madison Corp., 382 N.E.2d 1030, 1034 (Mass. 1978) (under Massachusetts law, after a failed

demand is made on the directors, demand must also be made on the other shareholders).

Here, plaintiffs do not even try to comply with Federal Rule 23.1.  They do not

purport to bring a derivative claim, do not allege that they made demand on the trustees, and do

not explain why making such demand would have been futile.  Accordingly, all of plaintiffs'

claims, other than Count IV, fail as a matter of law.

## II.    COUNT III SHOULD BE DISMISSED BECAUSE THERE IS NO PRIVATE RIGHT OF ACTION UNDER SECTION 36(a) OF THE ICA.

In Count III, plaintiffs allege that all defendants violated Section 36(a) of the ICA

by breaching their fiduciary duties.  See Compl. ¶¶ 37-40.  As discussed above, this claim fails

because it cannot be brought directly by shareholders.  In addition, this claim fails because there

is no private right of action under Section 36(a) of the ICA.

### A.    Under Recent Supreme Court Precedent, Courts Must Focus on Statutory Text and Structure in Determining Whether Congress Intended to Confer a Private Right of Action.

Section 36(a) does not grant an express cause of action to private litigants.  See 15

U.S.C. § 80a-35(a).  Thus, for plaintiffs' claim to survive a motion to dismiss, plaintiffs must

establish that an *implied* private right of action exists under Section 36(a) of the ICA.  Plaintiffs

cannot meet this burden.

The determination of whether a private right of action exists under a federal

statute is "limited solely to determining whether Congress intended to create [a] private right of

action."  Touche Ross & Co. v. Redington, 442 U.S. 560, 568 (1979).  As the Supreme Court

recently explained:

10

> [P]rivate rights of action to enforce federal law must be created by
> Congress. The judicial task is to interpret the statute Congress has
> passed to determine whether it displays an intent to create not just
> a private right but also a private remedy. Statutory intent on this
> latter point is determinative. Without it, a cause of action does not
> exist and courts may not create one, no matter how desirable that
> might be as a policy matter, or how compatible with the statute.

Alexander v. Sandoval, 532 U.S. 275, 286-87 (2001) (internal citations omitted). Thus, while

there was once a time when courts would imply private rights of action to effectuate statutory

purposes -- even where the statute itself manifested no Congressional intent to create such a right

-- those decisions belong to a now discredited *ancien regime*." Id. at 287; see also Corr. Servs.

Corp. v. Malesko, 534 U.S. 61, 67 (2001) ("[W]e have retreated from our previous willingness to

imply a cause of action where Congress has not provided one.").

In a series of recent decisions, the Supreme Court has made clear that, in

determining legislative intent, courts must focus on the "text and structure" of the statute.

Sandoval, 532 U.S. at 288. As the Court has explained, "[w]here the text and structure of a

statute provide no indication that Congress intends to create new individual rights, there is no

basis for a private suit . . . ." Gonzaga Univ. v. Doe, 536 U.S. 273, 286 (2002); see also Three

Rivers Ctr. for Indep. Living, Inc. v. Hous. Auth. of Pittsburgh, 382 F.3d 412, 420-21 (3d Cir.

2004) (relying on Sandoval's renewed focus on statutory "text and structure"); Sabree v.

Richman, 367 F.3d 180, 188 (3d Cir. 2004) (same).

To confer individual rights, Congress must use "rights-creating language."

Sandoval, 532 U.S. at 288. That is, the text of the statute must be phrased "with an *unmistakable*

*focus* on the benefited class." Gonzaga, 536 U.S. at 284 (emphasis in original) (internal

quotations omitted). By contrast, "[s]tatutes that focus on the person regulated rather than the

11

individual protected create no implication of an intent to confer rights on a particular class of persons." Sandoval, 532 U.S. at 289 (internal quotations omitted).

Moreover, "even where a statute is phrased in such explicit rights-creating terms," a plaintiff attempting to sue under an implied right of action "still must show that the statute manifests an intent 'to create not just a private *right* but also a private *remedy*.'" Gonzaga, 536 U.S. at 284 (citing Sandoval, 532 U.S. at 286) (emphasis in original). Thus, a court deciding whether an implied right of action exists must consider, among other things, whether Congress provided its own "remedial scheme" in the statute. Sandoval, 532 U.S. at 290. As the Supreme Court recently explained, the "express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." Id.; see also Transamerica Mtg. Advisors, Inc. v. Lewis, 444 U.S. 11, 19 (1979) ("[W]here a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it."). This is especially true where Congress has granted an express private right of action in other parts of the statutory scheme. See, e.g., Touche Ross, 442 U.S. at 571-74 (declining to imply private right of action under Section 17(a) of the Exchange Act, in part, because "§ 17(a) is flanked by provisions . . . that explicitly grant private causes of action").

In the only Circuit Court decision to apply Sandoval to the ICA, Olmsted v. Pruco Life Insurance Co. of New Jersey, 283 F.3d 429 (2d Cir. 2002), the Second Circuit held that no private right of action exists under either Section 26(f) or Section 27(i) of the ICA. See id. at 432-36. The court reasoned that because neither section "explicitly provides for a private right of action . . . we must presume that Congress did not intend one." Id. at 432. The court found that this "presumption is strengthened by three additional features of the statute." Id. First,

Sections 26(f) and 27(i) "do not contain rights-creating language" because they "only describe[] actions by insurance companies that are prohibited," i.e., they "focus on the person regulated rather than the individuals protected." Id. at 433. Second, Section 42 of the ICA, which provides for SEC enforcement of the ICA, weakens any implication that Congress intended to create a private remedy because the "express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." Id. Third, Congress' provision of a private right of action to enforce Section 36(b) of the ICA "suggests that omission of an explicit private right to enforce other sections was intentional." Id.

As discussed below, under Sandoval and its progeny, plaintiffs' claim under Section 36(a) of the ICA should be dismissed because the "text and structure" of the statute reveal no congressional intent to create a private right of action.

**B.      The Language and Structure of Section 36(a) Manifest No Congressional Intent to Confer a Private Right of Action.**

The Court should dismiss plaintiffs' Section 36(a) claim because the text and structure of Section 36(a) manifest no intent by Congress to confer a private cause of action. Section 36(a) states in relevant part:

> The Commission is authorized to bring an action . . ., alleging that a person serving or acting in one or more of the following capacities has engaged . . . or is about to engage in any act or practice constituting a breach of fiduciary duty involving personal misconduct in respect of any registered investment company for which such person so serves or acts
>
> (a) as officer, director, member of any advisory board, investment adviser, or depositor . . .
>
> If such allegations are established, the court may enjoin such persons from acting in any or all such capacities either

13

> permanently or temporarily and award such injunctive relief or
> other relief against such person as may be reasonable and
> appropriate in the circumstances, having due regard to the
> protection of investors and to the effectuation of the policies
> declared in section 80a-1(b) of this title.

15 U.S.C. § 80a-35(a).

Because Section 36(a) does not provide for an express private right of action, "we must presume that Congress did not intend one." Olmsted, 283 F.3d at 432; see also West Allis Mem'l Hosp. v. Bowen, 852 F.2d 251, 254 (7th Cir. 1988) ("A strong presumption exists against the creation of . . . implied rights of action."). Several features of the text and structure of the statute render this presumption conclusive.

First, Section 36(a) contains no "rights-creating language." The statute is not phrased with an "unmistakable focus" on granting "individual rights" or "entitlements." See Gonzaga, 536 U.S. at 284-85, 287; Sabree, 367 F.3d at 187-88 (relying on Gonzaga and Sandoval in stating that both implied private rights of action and statutory claims under Section 1983 "must be premised on an unambiguous articulation and conferral of rights by Congress"). To the contrary, the plain focus of the statute is on empowering *the SEC* to file suit. It states only that "[t]he *Commission* is authorized to bring an action . . . ." 15 U.S.C. § 80a-35(a) (emphasis added).

In Sandoval, the Court held that a similar statute was "twice removed" from conferring individual rights because "[i]t focuse[d] neither on the individuals protected nor even on the [person] being regulated, but on the agencies that will do the regulating." Sandoval, 532 U.S. at 289. Similarly, in Gonzaga, the Court held that a statute directing the Secretary of Education not to disburse funds to educational institutions that release records to unauthorized

14

persons was "two steps removed from individual students and parents" and "[did] not confer" any "individual entitlement." Gonzaga, 536 U.S. at 287. The Supreme Court's reasoning in Sandoval and Gonzaga applies with equal force here.[8]

Second, Section 36(a) is not merely silent with regard to who may enforce it. Rather, Congress expressly and directly stated in the statute that "*[t]he Commission* is authorized to bring an action" for injunctive or other relief. 15 U.S.C. § 80a-35(a) (emphasis added). Again, "[t]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." Sandoval, 532 U.S. at 290; Olmsted, 283 F.3d at 433; Williams v. Nat'l Sch. of Health Tech., 836 F. Supp. 273, 279 (E.D. Pa. 1993) ("Where a statute provides an administrative enforcement mechanism, it is presumed that Congress did not mean to create a private right of action.") (citing Karahalios v. Nat'l Fed'n of Fed. Employees, Local 1263, 489 U.S. 527, 533 (1989)).

Third, to the extent it is relevant, the drafting history of Section 36(a) belies a congressional intent to create a private right of action. In 1970, Congress split the original Section 36 into two subsections. Specifically, Congress added a new subsection, Section 36(b), creating a fiduciary duty on the part of investment advisers with respect to the receipt of

---

[8] While Section 36(a) refers to "investors," it does so only in the context of stating that, if the *SEC* establishes a violation of Section 36(a), a court should give "due regard to the protection of investors" in formulating appropriate relief *in that action*. 15 U.S.C. § 80a-35(a) (emphasis added). Obviously, it is one thing to say that a court should consider the "protection of investors" when awarding relief in an SEC action, and quite another to say that individual investors may bring their own actions. See Chamberlain v. Aberdeen Asset Mgmt. Ltd., No. 02 CV 5870(SJ), 2005 WL 195520, at *3 (E.D.N.Y. Jan. 21, 2005) (holding that Section 36(a) cannot be enforced in a private action and noting that it mentions investors only in connection with the remedy to be awarded "after the Securities and Exchange Commission has established its allegations of breach of fiduciary duty").

compensation for services. See Pub. L. No. 91-547, 84 Stat. 113 (1970) (codified at 15 U.S.C. § 80a-35(b)). Congress also designated the original Section 36 as subsection (a), and made substantive changes to the type of conduct covered by the new Section 36(a) and the range of relief available to the SEC. Id.; see also S. REP. No. 91-184, at 33.

Significantly, Congress expressly provided for a private right of action under Section 36(b), but did not do so for Section 36(a). Compare 15 U.S.C. § 80a-35(b) ("An action may be brought . . . by the Commission, or by a security holder . . . .") with § 80a-35(a) ("The Commission is authorized to bring an action . . . ."). The express provision of a private right of action in Section 36(b) shows that, "when Congress wished to provide a private damages remedy, it knew how to do so and did so expressly." Olmsted, 283 F.3d at 433 (quoting Touche Ross, 442 U.S. at 572); Three Rivers Ctr., 382 F.3d at 420-21 (favorably citing Olmsted for "observing that in the Investment Company Act of 1940 Congress explicitly provided a private right of action to enforce some provisions of the statute but not others."). Moreover, the fact that Congress used different language in the two subsections is clear evidence that it intended a different result. See, e.g., Russello v. United States, 464 U.S. 16, 23 (1983) ("We refrain from concluding there that differing language in the two subsections has the same meaning in each.").

Finally, although no case in the Third Circuit has yet to apply Sandoval to Section 36(a), very recent precedent holds that "when Olmsted and Sandoval are applied to ICA Section 36(a), it is evident that the provision does not give rise to a private right of action." Chamberlain v. Aberdeen Asset Mgmt. Ltd., No. 02 CV 5870(SJ), 2005 WL 195520, at *4 (E.D.N.Y. Jan. 21, 2005). In reaching that conclusion, the court relied on each of the factors discussed above, i.e., (1) the lack of any rights-creating language, (2) the fact that Congress

expressly granted only the SEC the authority to bring an action alleging violation of fiduciary duties, and (3) the "implication . . . that if Congress wished to create a private right of action for violations of Section 36(a), it could have done so, as it did for Section 36(b)." See id. at *2-3.[9]

Accordingly, as the Chamberlain court correctly concluded, under the principles laid down in Sandoval, and based on the statute itself, there is no implied private right of action under Section 36(a). The Court should therefore dismiss Count III.

## III.   COUNT IV SHOULD BE DISMISSED BECAUSE PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 36(b) OF THE ICA.

In Count IV, plaintiffs allege that Advisor Defendants and Parent Company Defendant violated Section 36(b) of the ICA -- a provision which governs excessive advisory fees. Because plaintiffs have not alleged that the Advisor Defendants charged excessive fees, but instead allege only general breaches of fiduciary duty unrelated to adviser compensation, this claim should be dismissed.

### A.   Count IV Should be Dismissed Because Plaintiffs do not and Cannot Plead a Claim for Excessive Advisory Fees.

Section 36(b) provides a "very specific, narrow federal remedy." Green v. Fund Asset Mgmt., 286 F.3d 682, 685 (3d Cir. 2002).  It provides, in pertinent part, that the

---

[9]   Plaintiffs may attempt to rely upon pre-Sandoval cases holding there is an implied private right of action under Section 36(a).  As noted above, however, Sandoval explicitly cautioned courts that these older decisions allowed implied rights of action under a lesser standard than is currently the law and thus belong to a now rejected "ancien regime." Sandoval, 532 U.S. at 287.  In Chamberlain, the court correctly observed that the "Olmsted court listed among these cases representing the ancien regime a number of cases finding private rights of action under ICA § 36(a)." Chamberlain, 2005 WL 195520, at *2; see also Olmsted, 283 F.3d at 434 n.4 (listing six pre-Sandoval Section 36(a) cases).

"investment adviser of a registered investment company shall be deemed to have a fiduciary duty with respect to the receipt of compensation for services, or of payments of a material nature, paid by such registered investment company, or by the securities holders thereof. . . " 15 U.S.C. § 80a-35(b).

"Section 36(b) does not apply to every alleged breach of fiduciary duty by an investment adviser." Rohrbaugh v. Inv. Co. Inst., CIV. A. No. 00-1237, 2002 WL 31100821, at *8 (D.D.C. July 2, 2002). As the Fourth Circuit held in Migdal v. Rowe Price-Fleming International: "General breach of fiduciary duty claims which involve merely an incidental or speculative effect on advisory fees are not properly within the scope of Section 36(b)." Migdal, 248 F.3d at 329 (adopted by Third Circuit in Krantz v. Prudential Inv. Fund Mgmt. LLC, 305 F.3d 140, 143 (3d Cir. 2002)); see also Benak v. Alliance Capital Mgmt. L.P., No. Civ. A. 01-5734, 2004 WL 1459249, at *7 (D.N.J. Feb. 9, 2004) ("those courts analyzing § 36(b) have emphasized its inapplicability to allegations of corporate mismanagement"); Green v. Nuveen Advisory Corp., 295 F.3d 738, 744 n.9 (7th Cir. 2002) ("[F]und mismanagement issues" are not within the purview of Section 36(b)).

Rather than creating a general fiduciary duty, Section 36(b) creates a limited fiduciary duty on behalf of fund advisers only "with respect to determining and receiving their advisory fees." Green, 286 F.3d at 685. Therefore, to state a claim under Section 36(b), a plaintiff must allege that the "adviser-manager" charged a "fee that is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining." Migdal, 248 F.3d at 326; see also Benak, 2004 WL 1459249. In Krantz, 305 F.3d 140, for instance, the Third Circuit affirmed the dismissal of a

claim under Section 36(b) "since Plaintiff failed to allege any facts indicating that the fees received were disproportionate to services rendered." Id. at 143; see also Millenco L.P. v. VC Advisors, Inc., Civ. A. No. 02-142-JJF, 2002 U.S. Dist. LEXIS 19512, at *8 (D. Del. Aug. 21, 2002) (plaintiff "must allege sufficient *facts* in the Complaint to demonstrate that [the defendant] Advisors breached their fiduciary duty by charging a fee so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arms-length bargaining") (emphasis added).

Here, plaintiffs do not allege that the advisory fees were excessive. Instead, their entire Complaint focuses on an alleged breach of fiduciary duty that is wholly unrelated to the amount of advisory fees.[10] Thus, plaintiffs' Section 36(b) claim fails.

**B.      Plaintiffs Fail to State a Claim Under Section 36(b) Because They do not Seek to Recover on Behalf of the Funds.**

Plaintiffs also fail to state a claim because they do not seek to recover on behalf of the Funds. As Section 36(b) makes clear, a shareholder claim must be brought "on behalf of" an investment company. While the Supreme Court has held that this language does not require Section 36(b) claims to be brought derivatively, it has also made clear that "any recovery obtained in a Section 36(b) claim will go to the company rather than the plaintiff." Daily Income Fund, Inc. v. Fox, 464 U.S. 523, 535 n. 11. (1984). Here, plaintiffs do not seek to recover on behalf of the Funds, choosing, instead, to seek recovery for themselves. See Compl. pp. 18-19

---

[10]     In fact, plaintiffs' entire theory is inconsistent with a claim of excessive fees. Plaintiffs allege that the Funds failed to recover money that belonged to the Funds. Any such failure would decrease -- not increase -- advisory fees, as such fees are based upon the asset value of the Funds.

(seeking compensatory and punitive damages on behalf of the "the Class"). Because plaintiffs cannot themselves recover under Section 36(b), they have failed to state a claim.

### C.    Plaintiffs Cannot Bring a Section 36(b) Claim against Gartmore Mutual Funds, Inc.

Finally, plaintiffs' claim under Section 36(b) also fails as against Gartmore Mutual Funds, Inc. (the so-called "Parent Company Defendant"). See Compl. ¶ 42.

"Under section 36(b), a shareholder may only sue the recipient of the fees." Green, 286 F. 3d at 685. As Section 36(b)(3) itself makes clear: "No such action shall be brought or maintained against any person other than the recipient of such compensation or payments, and no damages or other relief shall be granted against any person other than the recipient of such compensation or payments." See 15 U.S.C. § 80a-35(b). Here, even if Gartmore Mutual Funds, Inc. were an entity that existed, plaintiffs do not allege that Gartmore Mutual Funds, Inc. as *parent* to the Advisor Defendants, received any fees. Therefore, plaintiffs' Section 36(b) claim against it fails.

## IV.    COUNT V FAILS TO STATE A CLAIM AND SHOULD BE DISMISSED.

In Count V, plaintiffs rely on Section 47(b) of the ICA, 15 U.S.C. § 80a-46(b), to attempt to void the "Agreements between the Advisor Defendants (and the Parent Company and Other Affiliates) and the Funds" and to recover all funds paid under these contracts "during the time period that the violations occurred." See Compl. ¶¶ 47-48. This Count should be dismissed because plaintiffs: (1) lack standing to sue under Section 47(b); (2) fail to plead a viable claim under any section of the ICA; and (3) fail to plead that any advisory contracts were illegal.

### A.     Plaintiffs Have no Standing to Sue Under Section 47(b).

First, Count V fails because plaintiffs have no standing to sue under Section

47(b). Section 47(b) states in relevant part:

> (b) Equitable results; rescission; severance.
>
> > (1) A contract that is made, or whose performance involves, a
> > violation of this title, or of any rule, regulation, or order
> > thereunder, is unenforceable *by either party* (or by a nonparty
> > to the contract who acquired a right under the contract with
> > knowledge of the facts by reason of which the making or
> > performance violated or would violate any provision of this
> > title or of any rule, regulation, or order thereunder) . . . .
> >
> > (2) To the extent that a contract described in paragraph (1)
> > has been performed, a court may not deny rescission *at the
> > instance of any party* . . . .

See 15 U.S.C. § 80a-46(b). As the statute makes clear, only the parties to the advisory

agreements have standing to seek Section 47(b) remedies. See Lessler v. Little, 857 F.2d 866,

874 (1st Cir. 1988) (affirming dismissal of Section 47(b) claim because "a shareholder . . lacks

standing to pursue on his own claims properly belonging to the corporation"). Here, plaintiffs

are not parties to any of the advisory agreements. Therefore, plaintiffs have no standing to sue

under Section 47(b).[11]

---

[11]     Similarly, the Supreme Court has recognized that, under Section 47(b)'s "counterpart" in
the Securities Exchange Act of 1934, i.e., Section 29(b), 15 U.S.C. § 78cc(b),
shareholders who are not parties to the agreement have no right to set it aside. Mills v.
Elec. Auto-Lite Co., 396 U.S. 375, 387 (1970); see also Cohen v. Citibank, N.A., 954 F.
Supp. 621, 626 (S.D.N.Y. 1996) ( a plaintiff must show "he is in contractual privity with
the defendant" to bring a Section 29 claim). Courts have reached the same conclusion
with regard to Section 215 of the Investment Advisers Act of 1940, 15 U.S.C. § 80b-15,
another one of Section 47(b)'s "counterparts." Mills, 396 U.S. at 387 (sections 215 and
47(b) are "counterparts"). See, e.g., Clark v. Nevis Capital Mgmt., LLC, 04 Civ. 2702,
2005 WL 488641, at *13 (S.D.N.Y. Mar. 2, 2005) (citing numerous cases holding that

**B.**    **Plaintiffs' Claim Under Section 47(b) Fails Because they Cannot Establish an Underlying Violation of the ICA.**

In addition, plaintiffs' claim fails because Section 47(b) allows for rescission only for a contract that "is made, or whose performance involves, a violation of this title, or of any rule, regulation, or order thereunder." 15 U.S.C. § 80a-46(b).  Thus, a contracting party "can seek relief under Section 47 only by showing a violation of some other section of the Act." Tarlov v. Paine Webber Cashfund, Inc., 559 F. Supp. 429, 438 (D. Conn. 1983); Blatt v. Merrill Lynch, Pierce, Fenner & Smith Inc., 916 F. Supp. 1343, 1349 (D.N.J. 1996); see also Somogyi v. Butler, 518 F.Supp. 970, 981 (D.N.J. 1981) (noting that Section 29 remedies are only available for "a violation of a separate provision of the [Exchange] Act").  Because, as shown above, plaintiffs' claims under the ICA fail, the Section 47(b) claim fails, too.

**C.**    **Plaintiffs' Claim Fails Because they do not Allege that the Advisory Agreements, either on their face, or as Necessarily Performed, Violated the ICA.**

Finally, Count V fails because plaintiffs do not allege that the advisory contracts as drafted or as necessarily performed violate the ICA.

Not every breach of fiduciary duty gives rise to a Section 47(b) claim.  By its own terms, Section 47(b) applies only to "*[a] contract that is made, or whose performance involves,* a violation of this title, or of any rule, regulation or under thereunder." 15 U.S.C. § 80a-46(b) (emphasis added).  Therefore, to violate Section 47(b), the contract, as written, must violate the ICA, or the contract must require performance which necessarily would violate the ICA.  Indeed,

---

"only parties to an investment advisory contract may sue for rescission under section 215.").

to apply this section to an advisory contract that just happens to be in place when the adviser breaches a duty unrelated to the contract would render the statutory language superfluous. See generally, Cushman v. Trans Union Corp., 115 F.3d 220, 225 (3d Cir. 1997) (noting that the Third Circuit strives to interpret statutes to "avoid a result that would render statutory language superfluous, meaningless, or irrelevant").

The Third Circuit has not addressed the applicability of Section 47(b) of the ICA. It has, however, analyzed Section 29(b) of the Securities Exchange Act of 1934 ("Exchange Act"), another federal securities law provision that sets forth circumstances under which a contract can be voided or rescinded. See, e.g., GFL Advantage Fund, Ltd. v. Colkitt, 272 F.3d 189 (3d Cir. 2001). The relevant provisions of Section 29(b) and Section 47(b) are substantially identical in substance.[12] See Mills v. Elec. Auto-Lite Co., 396 U.S. 375, 387 (1970) (using cases analyzing Section 47 to address a question under Section 29 because these statutes are "counterparts").

In GFL, 272 F.3d 189, the plaintiff sought to hold a series of notes unenforceable and void under Section 29(b). In analyzing plaintiffs' claims, the Court noted the important distinction between "unlawful contracts," which give rise to Section 29(b) remedies, and "unlawful transactions," which do not. Specifically, the Court held that when the conduct complained of is "inseparable from the performance of the contract" such that a party "could not

---

[12]   Section 47(b) states that it applies to "a contract that is made, or whose performance involves, a violation of this title, or of any rule, regulation, or order thereunder," 15 U.S.C. § 80a-46(b), while Section 29(b) applies to "[e]very contract made in violation of any provisions of this title or of any rule or regulation thereunder, and every contact . . . the performance of which involves the violation of, or the continuance of any relationship or practice in violation of, any provision of this title or any rule or regulation thereunder," 15 U.S.C. § 78cc(b).

carry out his obligations under the agreement[] without violating the [statute]," then remedies were available under Section 29(b).  On the other hand, when the actions complained of were "collateral or tangential to the contract between the parties," there was no Section 29(b) remedy. Id. at 201 (citing Reg'l Props., Inc. v. Fin. and Real Estate Consulting Co., 678 F.2d 552, 560 (5th Cir. 1982); Grove v. First Nat'l Bank of Herminie, 489 F.2d 512, 513 (3d Cir. 1974); Stonehill v. Sec. Nat'l Bank, 68 F.R.D. 24, 28 (S.D.N.Y. 1975); Slomiak v. Bear Stearns & Co., 597 F. Supp. 676, 677 (S.D.N.Y. 1984); Drasner v. Thomson McKinnon Secs., Inc., 433 F. Supp. 485, 488-89 (S.D.N.Y. 1977)).

Given the strong similarity between Sections 29(b) and 47(b), it follows that Section 47(b) remedies are only available if the text of the advisory agreements violates the ICA or if the performance of the agreements would necessarily violate the ICA.  Here, plaintiffs' claims have nothing to do with the agreements.  Plaintiffs do not allege that the contracts, as written, required the Advisor Defendants not to file proofs of claim; nor do they allege that the agreements could not be performed absent such a failure.  Thus, there is little question that plaintiffs' allegations are "collateral or tangential to the contract between the parties." GFL, 272 F.3d at 201.  Therefore, plaintiffs have no remedy under Count V and this claim should be dismissed.

## V.      PLAINTIFFS LACK STANDING TO SUE.

In addition to the legal flaws that permeate plaintiffs' Complaint, plaintiffs lack standing to sue.  To have standing, a plaintiff must have been injured as a result of its dealings with the defendant.  With regard to shareholder suits against mutual funds, this means that a shareholder cannot make claims regarding a fund in which it owned no shares.  Here, plaintiffs

do not identify the "one" Fund in which each owned shares. They also seek to sue on behalf of shareholders in 38 separate Funds, even though they did not own shares in all such Funds. Accordingly, plaintiffs lack standing to sue.

Under the standing requirements of Article III of the Constitution, a plaintiff must have personally suffered an injury that is "fairly traceable to the challenged action and relief from the injury must be likely to follow from a favorable decision." Allen v. Wright, 468 U.S. 737, 750 (1984). This test does not change because a case is brought as a putative class action. As the Supreme Court has written: "even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." Simon v. E. Kentucky Welfare Rights Org., 426 U.S. 26, 40 n. 20. Thus, as courts recognize:

> It is not enough that a named plaintiff can establish a case or controversy between himself and the defendant by virtue of having standing as to one of many claims he wishes to assert. Rather, each claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to the claim.

Prado-Steinman v. Bush, 221 F.3d 1266, 1280 (11th Cir. 2000).

In Kauffman, the Third Circuit held that a plaintiff who owned shares in four mutual funds could not bring a suit on behalf of a class of shareholders in 61 other similarly situated mutual funds. Kauffman, 434 F.2d at 734. The court explained that a plaintiff who does not own shares in a fund cannot be a proper representative because "[t]he rights sought to be enforced cannot be considered 'common' to those who do and those who do not own shares."

Id. at 736.[13]  Similarly, in In re Eaton Vance Corp. Sec. Litig., 219 F.R.D. 38 (D. Mass. 2003),

the plaintiffs owned shares in two funds, but sued four separate funds.  Relying upon Supreme

Court precedent, the court held that plaintiffs lacked standing to sue the two funds in which they

held no shares:

> [T]he named plaintiffs never purchased shares in or conducted any
> other business with two of the four funds, namely, the Institutional
> and Advisers funds.  The named plaintiffs have therefore not been
> injured by Institutional and Advisers funds.  Because the plaintiffs
> cannot "demonstrate the requisite case or controversy between
> themselves personally and [the Institutional and Advisers funds]
> 'none may seek relief on behalf of himself or any other member of
> the class.'"  Blum v. Yaretsky, 457 U.S. 991, 1001 n. 13 (1982)
> (quoting O'Shea v. Littleton, 414 U.S. 488, 494 (1974)).  The
> named plaintiffs' claim against the Institutional and Advisers funds
> are therefore dismissed. . . .

Eaton Vance, 219 F.R.D. at 41 (citations omitted); see also Williams v. Bank One Corp., CIV. A.

No. 03-8561, 2003 WL 2296476 (N.D. Ill. Dec. 15, 2003) (even where funds are not separate

legal entities, but merely different series of beneficial interests in a trust, a plaintiff may not sue

funds in which he owned no shares).

As this case law makes clear, plaintiffs have standing to file claims only about

Funds in which they owned shares.  Here, however, plaintiffs fail even to identify the "one"

Fund they owned.  See Compl. ¶ 10.  Thus, on the face of the Complaint, there is no way to tell

---

[13]     This reasoning also applies to derivative actions.  Id. at 737; see also Fed. R. Civ. P. 23.1
(in a shareholder derivative action, a plaintiff must allege "that the plaintiff was *a
shareholder or member* at the time of the transaction of which the plaintiff complains or
that the plaintiff's share or membership thereafter devolved on the plaintiff by operation
of law") (emphasis added); In re Value Line Special Situation Fund Litig., No. M 19-
103(CHT), 1974 WL 412, at *8 (S.D.N.Y. June 13, 1974) (applying Kauffman and
dismissing a derivative action when the plaintiff did not own shares in the investment
companies on whose behalf she sought to bring the action).

whether plaintiffs have standing to sue any particular Fund.  This failure matters because, obviously, if plaintiffs held shares of a Fund that participated in all settlements, they would have suffered no injury and could bring no claim.

In addition, plaintiffs lack standing to make claims regarding all 38 Funds. Plaintiffs do not allege that they owned stock in all of the Funds.  As a result, they cannot bring claims regarding those Funds.  See Kauffman, 434 F.2d 727; Eaton Vance, 219 F.R.D. 38. Indeed, some of Gartmore's funds do not even invest in stocks; others owned no stocks that were the subject of any class settlements.  Thus, there is simply no way that plaintiffs can substantiate claims regarding them.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.


Respectfully Submitted,


Robert C. Heim
Michael S. Doluisio
Scott A. Thompson
Kristina C. Evans
Dechert LLP
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, PA 19103
(215) 994-4000

Attorneys for the Gartmore Defendants


Dated: March 24, 2005

27

## CERTIFICATE OF SERVICE

I, Scott A. Thompson, do hereby certify that on March 24, 2005, I caused a true and correct copy of the Gartmore Defendants' Motion to Dismiss, the Memorandum of Law in Support of the Gartmore Defendants' Motion to Dismiss, and a proposed Order, to be served upon the following by Facsimile and Federal Express:

Marc L. Ackerman
BRODSKY & SMITH, LLC
Two Bala Plaza, Suite 602
Bala Cynwyd, PA 19004
(610) 667-6200
(610) 667-9029 (fax)

Randall K. Pulliam
BARON & BUDD, P.C.
3102 Oak Lawn Ave.
Suite 1100
Dallas, Texas 75219
(214) 521-3605
(214) 520-1181 (fax)

J. Allen Carney
Hank Bates
CAULEY BOWMAN CARNEY & WILLIAMS, LLP
11311 Arcade Dr.
Suite 200
Little Rock, Arkansas 72212
(501) 312-8500
(501) 312-8505 (fax)

*Attorneys for Plaintiffs*

_Scott A. Thompson_
Scott A. Thompson, Esquire