# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

_____

| | | |
|---|---|---|
| | § | |
| | § | |
| CAROLINE HAMILTON and JAMES | § | |
| JACOBS, on Behalf of Themselves and All | § | |
| Others Similarly Situated, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | Case No. 2:05-cv-110 |
| v. | § | |
| | § | |
| CHARLES E. ALLEN, PAULA H.J. | § | |
| CHOLMONDELEY, C. BRENT DeVOE, | § | |
| ROBERT M. DUNCAN, BARBARA L. | § | |
| HENNIGAR, THOMAS J. KERR, IV, | § | |
| DOUGLAS F. KRIDLER, DAVID C. | § | |
| WETMORE, PAUL J. HONDROS, ARDEN L. | § | |
| SHISLER, GERALD J. HOLLAND, ERIC E. | § | |
| MILLER, GARTMORE MUTUAL FUNDS, | § | |
| INC., GARTMORE MUTUAL FUND | § | |
| CAPITAL TRUST, NORTHPOINTE CAPITAL | § | |
| LLC, FUND ASSET MANAGEMENT, LP, | § | |
| GARTMORE SEPARATE ACCOUNTS LLC, | § | |
| GARTMORE GLOBAL PARTNERS, and | § | |
| JOHN DOES 1 THROUGH 100 | § | |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |
| JURY TRIAL DEMANDED | § | |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................ii

INTRODUCTION..............................................................................................................1

ARGUMENT....................................................................................................................2

    A.    PLAINTIFFS' CLAIMS ARE PROPERLY BROUGHT AS A DIRECT ACTION...3

        1.    Plaintiffs' claims are properly brought as a direct action
               because Plaintiffs allege an injury directly to Plaintiffs and
               a breach of a duty owed directly to Plaintiffs .................................................4

        2.    Rule 23.1 does not apply to this direct action ...............................................8

    B.    FEDERAL ICA CLAIMS ARE PROPERLY ASSERTED BY PLAINTIFF............9

        1.    Long established jurisprudence supports plaintiffs' private
               right of action under ICA § 36(a).................................................................9

        2.    Plaintiffs Have Sufficiently Plead a Claim Under ICA
               36(b).........................13

        3.    ICA § 47(b) Provides a Remedy for Violations of Other ICA
               Sections........14

    C.    PLAINTIFFS HAVE STANDING TO BRING CLAIMS AGAINST
        ALL FUNDS WITHIN THE GARTMORE FAMILY OF FUNDS...........................15

        1.    Plaintiffs Have Standing to Bring a Direct Action Against
               the Advisors, Directors and Affiliates of the Investment
               Company of Which They Own Shares...........................................................15

        2.    Defendants' "Standing" Argument Is Premature Prior to a
               Motion for Class Certification......................................................................16

        3.    Plaintiffs May Represent Other Members Of The Putative Class
               Since Their Claims Are Based On The Same Legal Theories And
               Arise From The Same Scheme And Course Of Conduct...............................18

CONCLUSION.................................................................................................................19

# Table of Authorities

**Federal Cases**

*Alexander v. Sandoval*, 532 U.S. 275 (2001)

*Bancroft Convertible Fund, Inc. v. Zico Inv. Holdings, Inc.,* 285 F.2d 731 (3d Cir. 1987)

*Blatt v. Merrill Lynch,* 916 F.Supp. 1343 (D.N.J. 1996)

*Brown v. Bullock,* 294 F.2d 472 (2d Cir. 1961)

*Brouk v. Managed Funds, Inc.,* 286 F.2d 901 (8th Cir. 1961)

*In re: Burlington Coat Factory Secs. Litig.*, 114 F.3d 1420 (3d Cir. 1997)

*Carr v. Equistar Offshore Ltd.*, 1995 U.S. Dist. LEXIS 13703 (S.D.N.Y. Sept. 21, 1995)

*Carlson v. Rabkin*, 789 N.E.2d 1122 (Ohio Ct. App. 2003)

*Conley v. Gibson*, 355 U.S. 41 (1957)

*Daily Income Fund v. Cox*, 464 U.S. 523 (1984)

*In re: Dreyfus Aggressive Growth Mut. Fund Litig.*, 2000 U.S. Dist. LEXIS 13469 (S.D.N.Y. Sept. 20, 2000)

*Empire Life Ins. Co. of Am. v. Valdak Corp.*, 468 F.2d 330 (5th Cir. 1972)

*Esplin v. Hirschi*, 402 F.2d 94 (10th Cir. 1968)

*Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410 (6th Cir. 1998)

*Fogel v. Chestnutt*, 668 F.2d 100 (2d Cir. 1981)

*Frank v. Hadesman & Frank, Inc.*, 83 F.3d 158 (7th Cir. 1996)

*Galfand v. Chestnutt Corp.*, 545 F.2d 807 (2d Cir. 1976)

*Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147 (1982)

*Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002)

*Hicks v. Morgan Stanley & Co.*, 2003 U.S. Dist. LEXIS 11972 (S.D.N.Y. July 16, 2003)

*Hishon v. King & Spalding*, 467 U.S. 69 (1984)

*Holder v. City of Allentown*, 987 F.2d 188 (3d Cir. 1993)

*Kamen v. Kemper Fin. Svcs.*, 500 U.S. 90 (1991)

*Krantz v. Prudential Invs. Fund Mgmt.*, 77 F.Supp.2d 559 (D.N.J. 1999)

*Langer v. Brown*, 913 F.Supp. 260 (S.D.N.Y. 1996)

*Levitt v. Johnson*, 334 F.2d 815 (1st Cir. 1964)

*Maio v. Aetna, Inc.*, 221 F.3d 472 (3d Cir. 2000)

*Mann v. Kemper Fin. Co., Inc.*, 618 N.E.2d 317 (Ill. App. Ct. 1992)

*Maywalt v. Parker & Parsley Petroleum Co.*, 147 F.R.D. 51 (S.D.N.Y. 1993)

*McLachlan v. Simon*, 31 F.Supp.2d 731 (N.D. Cal. 1998)

*Meyer v. Oppenheimer Mgmt. Corp.* 764 F.2d 76 (2d Cir. 1985)

*Migdal v. Rowe-Price Fleming Int'l*, 248 F.3d 321 (4th Cir. 2001)

*In re: ML-Lee Acquisition Fund II*, 848 F.Supp. 527 (D.Del. 1994)

*In re: Nuveen Fund Litig.*, 1996 U.S. Dist. LEXIS 8071, No. 94-C-360 (N.D. Ill. June 11, 1996)

*Olmstead v. Pruco Life Ins.*, 283 F.3d 429 (2d Cir. 2002)

*Panfil v. Scudder Global Fund, Inc.*, 1993 WL 532537 (N.D. Ill. 1993)

*Payton v. County of Kane*, 308 F.3d 673 (7th Cir. 2002)

*Pfeiffer v. Bjurman, Barry & Assocs.*, 2004 U.S. Dist. LEXIS 16924 (S.D.N.Y. Aug. 26, 2004)

*In re: Prudential Sec. Inc., Ltd. P'shp Litig.*, 163 F.R.D. 200 (S.D.N.Y. 1995)

*Rohrbaugh v. Inv. Co. Inst.*, 2002 U.S. Dist. LEXIS 13401 (D.D.C. July 2, 2002)

*Scheuer v. Rhodes*, 416 U.S. 232 (1974)

*Seidel v. Lee*, 1994 U.S. Dist. LEXIS 21534 (D.Del. Oct. 14, 1994)

*Sosna v. Iowa*, 419 U.S. 393 (1975)

*Strigliabotti v. Franklin Resources*, 2005 WL 645529 (N.D. Cal. March 7, 2005)

*Strougo v. Bassini*, 282 F.3d 162 (2d Cir. 2002)

*In re: Sumitomo Copper Litig.*, 182 F.R.D. 85 (S.D.N.Y. 1998)

*Taussig v. Wellington Fund, Inc.*, 313 F.2d 472 (3d Cir. 1963)

*Tennenbaum v. Zeller*, 552 F.2d 402 (2d Cir. 1977)

*United States v. Cartwright*, 411 U.S. 546 (1973)

*Weston v. Pennsylvania*, 251 F.3d 420 (3d Cir. 2001)

*Young v. Nationwide Life Ins. Co.*, 2 F.Supp.2d 914 (S.D. Tex. 1998)

**State Cases**

*Letsos v. Century 21-New West Realty*, 675 N.E.2d 217 (Ill. App. Ct. 1996)

*Royal Carbo Corp. v. Flameguard, Inc., et al.*, 229 A.D.2d 430 (N.Y. App. Div. 1996)

**Legislative/Statutory Materials**

15 U.S.C. § 80a-1 (2005)

15 U.S.C. § 80a-8 (2005)

15 U.S.C. § 80a-35 (2005)

15 U.S.C. § 80a-36 (2005)

15 U.S.C. § 80a-46 (2005)

Fed R. Civ. P. 8 (2005)

Fed. R. Civ. P. 12(b)(6) (2005)

Fed. R. Civ. P. 23 (2005)

H.R. Pub. L. No. 96-477 (1980), reprinted in U.S.C.C.A.N. 4800, 4810–11)

**Secondary Materials**

American Law Institute's Principles of Corporate Governance: Analysis and Recommendations § 7.01(b) (1994)

James D. Cox & Randall S. Thomas, "Leaving Money on the Table: Do Institutional Investors Fail to File Claims in Securities Class Actions?" 80 WASH. U. L.Q. 855 (2002) (Copy attached as Exhibit 1).

Gartmore Funds Annual Report (October 31, 2004) *available at* http://gartmorefunds.com/pdf/ar-specialty.pdf. (Copy attached as exhibit 4).

RESTATEMENT (SECOND) AGENCY § 469 (1958)

David E. Riggs & Charles C.S. Park, "Mutual Funds: A Banker's Primer," 112 BANKING L.J. 757 (1995)

Alison Sahoo, *SEC Probing Funds' Participation in Class Actions* (February 3, 2004), *at* www.ignites.com (Copy attached as Exhibit 2).

## INTRODUCTION

Plaintiffs Caroline Hamilton and James Jacobs ("Plaintiffs") bring this putative class action against the advisors, directors, and affiliates of the Gartmore Family of Mutual Funds (collectively the "Defendants").[1] Plaintiffs allege that Defendants breached their fiduciary duty owed to Plaintiffs and other Gartmore mutual fund holders and violated sections 36(a) and 36(b) of the Investment Company Act of 1940 ("ICA") by failing to ensure that the Gartmore Funds participated in securities class actions for which they were eligible.

Defendants' Motion to Dismiss is without merit and should be denied. Defendants begin with the faulty premise that Plaintiffs' Complaint *must* be brought as a derivative action and overlook the significant jurisprudence establishing that it can be brought as a direct action. Once this strawman argument is created, Defendants knock it down by detailing how Plaintiffs' derivative claims must fail. Under Defendants' view of the law, there is no procedural mechanism for Plaintiffs and other investors to seek recovery for the injuries they have suffered, and Defendants can manage the putative class members' investments with impunity.

Even more illustrative than the contents of the Motion to Dismiss is what is left out. Defendants do not dispute, even in passing, the central element underlying Plaintiffs' claims, namely that Defendants have failed to file proofs of claim in settled securities cases and as a result have prevented Plaintiffs and the putative class from recovering money to which they were rightfully entitled. Defendants' malfeasance is emblematic of widespread problems in the mutual fund industry. Professors at Duke and Vanderbilt have conducted empirical studies and estimated that

---

[1]     All Defendants named in the complaint join in the motion to dismiss except for Fund Asset Management Corp., which filed a separate motion to dismiss. Plaintiffs will respond to Fund Asset Management's motion separately.

sixty-eight per cent of institutional investors have failed to participate in securities class action settlements.  James D. Cox & Randall S. Thomas, *Leaving Money on the Table: Do Institutional Investors Fail to File Claims in Securities Class Actions?*, 80 WASH. U. L.Q. 855 [hereinafter Cox & Thomas] (copy attached as Exhibit 1).    Shortly after this case was filed, the Securities and Exchange Commission launched an investigation into the issue.  Alison Sahoo, *SEC Probing Funds' Participation in Class Actions* (February 3, 2004), *at* www.ignites.com (copy attached as Exhibit 2).[2]

As demonstrated in this brief, Plaintiffs have standing to bring these claims as a direct action, and therefore as a putative class action, and have sufficiently plead claims for breach of fiduciary duty, negligence, violations of sections 36(a) and 36(b), and an equitable remedy provided under 47(b) of the ICA.  Accordingly, Defendants' motion should be denied.

## ARGUMENT

When reviewing a motion to dismiss, the court must accept as true the well-pleaded factual allegations of the complaint and view those allegations in the light most favorable to the plaintiff. *See In re: Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1420 (3rd Cir. 1997).  A motion to dismiss tests the sufficiency of the complaint, not the merits of the suit.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) ("The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims"), *overruled on other grounds*, *Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *accord Lake v. Arnold*, 112 F.3d 682, 688 (3rd Cir. 1997).  The sole issue to consider when reviewing a motion brought under Federal Rule of Civil Procedure Rule 12(b)(6) is whether, under any reasonable reading of the pleadings, plaintiff may be entitled to relief.

---

[2]        Despite this widespread epidemic of mutual fund families such as Gartmore failing to protect shareholders by filing proofs of claim in settled securities cases, Defendants find it novel that Plaintiffs' counsel has filed suit against many different mutual fund families.

*Holder v. City of Allentown*, 987 F.2d 188, 194 (3d Cir. 1993) (citing *Colburn v. Upper Darby Township,* 838 F.2d 663, 665-666 (3rd Cir. 1988)).

A complaint "need not plead law or match facts to every element of a legal theory." *Weston v. Pennsylvania,* 251 F.3d 420, 429 (3rd Cir. 2001) (internal citation omitted). All factual allegations in the complaint and all reasonable inferences that can be drawn therefrom are taken as true. *Holder*, 987 F.2d at 194 (quoting *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3rd Cir.1990)). A plaintiff is not required to plead all facts in the complaint; a plaintiff may later add allegations by affidavit or brief, even on appeal, to clarify allegations in the complaint. *Maio v. Aetna, Inc.*, 221 F.3d 472, 485 (3d Cir. 2000) (citing *Pegram v. Herdrich*, 530 U.S. 211, 229 (2000)). Likewise, the court may consider statements made by counsel at oral argument for that same purpose. *Maio*, 221 F.3d at 485. Unless otherwise provided by Rule 9, the Federal Rules of Civil Procedure do not require a plaintiff to set out in detail facts upon which a claim is based. *Conley* v. *Gibson,* 355 U.S. 41, 47 (1957). A plaintiff is required only to provide a short and plain statement of the claim "that will give the defendant fair notice of the claim and the grounds upon which it rests." *Conley*, 355 U.S. at 47 (1957) (internal footnote omitted). In effect, "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *see also Conley*, 355 U.S. at 45-46.

## A.   PLAINTIFFS' CLAIMS ARE PROPERLY BROUGHT AS A DIRECT ACTION

Although ignored by Defendants, numerous courts have found that an investor may bring a direct action, rather than a derivative action, under the ICA.[3] One of the clearly stated objectives

---

[3]   *Kamen v. Kemper Fin. Svcs.*, 500 U.S. 90, 108 (1991) (holding action under 36(b) is direct); *Daily Income Fund v. Cox*, 464 U.S. 523, 533, fn 8 (1984) (finding direct action under 36(b)); *Stougo v. Bassini*, 282 F.3d 162, 176–77 (2d Cir. 2002) (holding direct action was appropriate under 36(a), 36(b), and 48 of the ICA); *Esplin v.*

of the ICA is to "protect[] all classes of investment company security holders from the special interests of directors, officers . . . and preventing investment companies from failing to protect 'the preferences and privileges of the holders of their outstanding securities.'" 15 U.S.C. § 80a-1 (2005). This view has recently been reinforced by the holding in *Strougo v. Bassini*, 282 F.3d 162 (2d Cir. 2002). There, the Second Circuit held that mutual fund investors have standing to bring direct actions asserting private rights of action under several sections of the ICA, including section 36(a). *Id*. An action that is properly brought as a direct action may also be brought as a class action (presuming the requirements of Rule 23 are met); ergo, Plaintiffs' claims are properly brought as a putative class action.

### 1. Plaintiffs' Claims Are Properly Brought as a Direct Action Because Plaintiffs Allege an Injury Directly to Plaintiffs and a Breach of a Duty <u>Owed Directly to Plaintiffs</u>

Derivative and direct actions are not mutually exclusive; in fact, derivative and direct claims may be brought in the same action.[4] *Empire Life Ins. Co. of America v. Valdak Corp.,* 468 F.2d 330, 334-35 (5th Cir. 1972); American Law Institute's PRINCIPLES OF CORPORATE GOVERNANCE: ANALYSIS AND RECOMMENDATIONS § 7.01(b) (1994). Under all state laws, the critical distinction between a derivative and a direct action is that in order to bring a direct action, the plaintiff must plead an injury sustained by the individual investor *or* the breach of a duty owed directly to the individual investor. *Strigliabotti v. Franklin Resources,* 2005 WL 645529, at *8 (N.D. Cal. March 7, 2005) (internal citations omitted)*; Frank v. Hadesman and Frank, Inc.,* 83 F.3d 158, 160 (7th Cir.

---

*Hirschi,* 402 F.2d 94, 99–100 (10th Cir. 1968); *In re Nuveen Fund Litig.*, 1996 U.S. Dist. LEXIS 8071, at * 41-42, No. 94-C-360 (N.D. Ill. June 11, 1996) (holding that 36(b) is a direct action); *Langner v. Brown*, 913 F. Supp. 260, 266 (S.D.N.Y. 1996) (finding that remaining claims (§§ 36(b), 10(a), 17(a), 17(d) survived after dismissal of derivative claims); *Seidel v. Lee*, 1994 U.S. Dist. LEXIS 21534, at * 15–18 (D. Del. Oct. 14, 1994) (holding that ICA claims that affected plaintiff personally could be maintained as a direct action); *In re ML-Lee Acquisition Fund II, L.P.*, 848 F. Supp. 527, 562 (D. Del. 1994) (holding that suit was appropriate for class action).

[4]        The issue of whether this lawsuit could be brought, in the alternative, as a derivative is not before the court at this time and Plaintiffs therefore takes no position on this issue.

1996); American Law Institute's PRINCIPLES OF CORPORATE GOVERNANCE: ANALYSIS AND RECOMMENDATIONS § 7.01 (1994). Under Ohio law, if a shareholder suffers an injury that is distinct from the corporation, then a direct action is appropriate. *Carlson v. Rabkin*, 789 N.E.2d 1122, 1127–28 (Ohio Ct. App. 2003). Although Plaintiffs need only prove either a direct injury or a direct duty owed him, in this instance, both have been established. As Plaintiffs will demonstrate, the injury sustained by Plaintiffs was distinct from the funds (and from subsequent but present investors in those funds), and Defendants owe a fiduciary duty directly to Plaintiffs.

Because of the unique structure and operation of mutual funds and investment companies, it is the individual investors, rather than the funds, who directly suffer the consequences of Defendants' failure to ensure participation in securities class action settlements. "Mutual funds are fundamentally different from most enterprises in both their structure and operation." David E. Riggs & Charles C.S. Park, "Mutual Funds: A Banker's Primer," 112 BANKING LAW J. 757, 763 (1995) [hereinafter Riggs & Park]. "A mutual fund is a 'mere shell,' a pool of assets consisting mostly of portfolio securities that belong to the individual investors holding shares in the fund." *Tennenbaum v. Zeller*, 552 F.2d 402, 405 (2d Cir. 1977); *see also* Riggs & Park, 112 BANKING LAW J. at 758 (mutual funds serve as "conduits between investors and investment managers for the rendering of the manager's services"). Mutual funds "do not typically have employees or any physical plant" and have "virtually no liabilities." *Id.* at 763, 767. Each investor who pools his money with others in a mutual fund owns a proportional share of the total assets of the mutual fund. The value of each investor's portion of those pooled assets is determined by taking the market value of all of the fund's portfolio securities, adding the value of any other fund assets, subtracting fund liabilities (primarily fees paid to Defendants), and dividing the result by the number of shares outstanding. *United States v. Cartwright*, 411 U.S. 546, 548 (1973). This so-called "per share net asset value"

(NAV) is computed daily so that any gain or loss in fund assets is immediately allocated to the individual investors as of that specific date.   Riggs & Park, 112 BANKING LAW J. at 764. Accordingly, mutual funds are unlike conventional corporations in that any increase or decrease in fund assets is immediately passed on or allocated to the fund investors as of the date of the relevant recalculation of the NAV.

Recognizing the unique structure and operation of mutual funds, the court in *Strigliabotti* recently rejected the same argument that Defendants make here and allowed the plaintiff to proceed with a direct action.  In *Strigliabotti,* plaintiffs alleged fund advisors charged excessive fees.  *See Strigliabotti*, 2005 WL 645529.   Defendants contended that the fees were paid by the fund rather than the individual investors, and therefore the injury was sustained by the fund.  The Court rejected this argument as illusory, noting that "[e]very dollar of expense borne by the fund is distributed to the shareholders, as a pro rata deduction from the net asset value per share."  *Id.* at * 7 (copy attached as Exhibit 3).  The Court explained: "the financial harm from overcharges is harm to the individual investors, who own the Funds' assets and bear its expenses directly on a pro rata basis." *Id.* at *8.

The same reasoning applies here, where Plaintiffs and the putative class members are injured directly by Defendants' actions because had Defendants ensured that the Funds participated in the securities class action settlements, the settlement funds would have increased the total assets held by the Funds.  Such increase would have been distributed immediately to the then-current investors on a pro rata basis upon the recalculation of the NAV.

There is no concrete injury to the Fund itself; similarly, there is no injury whatsoever to shareholders who invest in the fund subsequent to the time of injury.[5] If this action were structured as a derivative, it would not as accurately nor as justly compensate the class of individuals actually harmed by the Defendants' conduct. Instead, the recovery in a derivative action allocated to the Fund would immediately be distributed through the recalculation of the Net Asset Value to the then-current shareholders, some of whom did not own shares at the time of injury and *none* of whom would own the same portion of the fund as they did at the time of injury. Furthermore, under a derivative scenario, all persons who owned shares at the time of injury but redeemed those shares before resolution of this action would be unjustly excluded from the recovery. Accordingly, since Plaintiffs have alleged a direct injury to themselves and the putative class members, this case is properly brought as a direct action.

In addition, Defendants have breached a fiduciary duty owed directly to Plaintiffs and the putative class members. The directors of the fund owe a fiduciary duty directly to the investors. *See, e.g.,* Cox & Thomas, *supra* at 860, 863. Further, given that a mutual fund is merely "a conduit for the rendering of investment management services," Riggs & Park, at 758, the advisors and their affiliates owe fiduciary duties directly to the individual investors just as they do to any other investors whom they advise. *Panfil v. Scudder Global Fund, Inc.,* 1993 WL 532537, at *4 (N.D. Ill. 1993); *Mann v. Kemper Financial Co., Inc.,* 618 N.E.2d 317, 327 (Ill. App. Ct. 1992); *see also* Cox & Thomas, at 863 (fund advisor is " a vendor of services to the mutual fund company, seen as having a fiduciary obligation to the fund and to the fund's shareholders").

---

[5]       In contrast, in the context of a traditional corporation, there would be no direct, objective or calculable correlation between the value of an individual share and any gains or losses in the small portion of that corporation's assets that may be invested in the market, since the value of a share of a traditional corporation is based upon numerous, subjective market forces, related to factors both internal and external to the corporation.

Gartmore's direct communication to the investors belies its current claims that it owes them no direct fiduciary duties. For example, in a "Message to Shareholders" in its 2004 Annual Report to all Gartmore fund holders, Gartmore's CEO[6] states "In keeping with our governance policies and unwavering commitment to placing the interests of shareholders first, we work closely with the Independent Board of Trustees, and continue to closely assess fund performance, to design and deliver new products, and to address critical investment issues that matter to you." Gartmore Funds Annual Report, (October 31, 2004) *available at* http://gartmorefunds.com/pdf/ar-specialty.pdf (attached as Exhibit 5). When it is convenient to entice or placate shareholders, no attempt is made to differentiate between a duty owed to the fund and duty owed to the shareholders. In fact, just the opposite is true as Defendants affirmatively proclaim a duty owed to shareholders and refer to the funds as mere "products." It is only upon a shareholder seeking to enforce one of his rights that Defendants manufacture a legal barrier between themselves and their investors.

As has been shown, Plaintiffs are owed a duty by Defendants and have personally and individually suffered harm distinct from the funds themselves (and from subsequent investors in the funds) as a result of Defendants' breach of that duty. Accordingly, Plaintiffs' allegations of breaches of duties owed directly to them and the putative class members provides a separate premise for pursuing this action directly.

### 2.      Rule 23.1 Does Not Apply to this Direct Action

Defendants assert that Plaintiffs failed to comply with Federal Rule of Civil Procedure 23.1. However, as a direct action rather than derivative action has been plead, compliance with Federal Rule of Civil Procedure 23.1 is inapplicable.

---

[6]      Paul J. Hondros is the CEO of all relevant Gartmore entities, including the investment advisor affiliate.

**B.      FEDERAL ICA CLAIMS ARE PROPERLY ASSERTED BY PLAINTIFF**

> **1.      Long Established Jurisprudence Supports Plaintiffs' Private Right of Action under ICA § 36(a)**

As a general matter, a statute creates a private right of action if its language is "phrased in terms of the persons benefitted."  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002); *Alexander v. Sandoval*, 532 U.S. 275, 286–88 (2001).  Defendants assert that recent case law in district courts, holding that no private right of action exists under isolated federal statutes, unravels the decades of specific precedent to the contrary.  Such an assertion is flatly wrong.  In determining whether to imply a private right of action, a court must look to the congressional intent, statutory language, and the statute's legislative history.  The Congressional declaration of policy for the ICA states: "it is hereby declared that the policy and purposes of this title, in accordance with which the provisions of this title shall be interpreted, and are to mitigate and, so far as is feasible, to eliminate the conditions enumerated in this section which adversely affect the national public interest and the interest of investors."  15 U.S.C. § 80a-1.

Assuming and providing no authority for the overrule of decades of implied private rights of action under the ICA presents this court with incomplete information.  Defendants largely rely on *Olmstead v. Pruco Life Ins.* for this position, which addresses claims under ICA sections 26(f) and 27(i), neither of which is at issue here.  283 F.3d 429 (2d Cir. 2002).  Defendants also cite *Alexander v. Sandoval*, which does not address ICA claims at all.  532 U.S. 275 (2001).  In fact, that case addresses claims made under another federal statute entirely.  No court or legislative body has taken the opportunity to directly state that there no longer exist implied private rights of action under

the ICA.  The *Central Bank*-court did not address private rights of action under the ICA; therefore, its holding did not overrule the precedents finding private rights of action under the ICA, which were established over the course of forty years.  Furthermore as one court stated, "...*Central Bank* does not stand for the principle that causes of action may not be judicially implied without textual support; the Court merely applied the strict textualist approach to discerning the statute's scope of prohibited conduct." *Young, supra*, 2 F.Supp.2d at 923.  No court or legislative body has explicitly decided that implication of private rights of action under the ICA is improper.

In the ICA context, federal courts have long recognized implied private rights of action under numerous ICA sections.[7]  In *Strougo*, the Second Circuit was directly presented with the question of whether to imply a private right of action under ICA section 36(a).  *Strougo v. Bassini,* 282 F.3d 162 (2d Cir. 2002).  In considering whether to do so, they opined, "We thus see nothing in the general policies of the ICA that would militate against importing Maryland's rules of shareholder standing for claims brought for alleged violations of the ICA sections cited by the plaintiff....  We hold that the plaintiff's alleged injuries associated with coercion support direct claims under both Maryland law and, in this case, §§ 36(a), 36(b), and 48 of the ICA." *Id*. at 176–77.

Over the course of the last four decades, courts in nearly every circuit have ruled that there is an implied right of action under section 36(a).  *See e.g., Fogel v. Chestnutt,* 668 F.2d 100 (2d Cir.

---

[7]  *See, e.g., Bancroft Convertible Fund, Inc. v. Zico Investment Holdings Inc.*, 825 F.2d 731, 733 (3d Cir. 1987) (holding private right of action is proper under ICA § 10); *Meyer v. Oppenheimer Mgmt. Corp.*, 764 F.2d 76, 87–88 (2d Cir. 1985) (finding private rights of action under ICA sections 15(f) & 36(b)); *Esplin v. Hirschi*, 402 F.2d 94, 102–03 (10th Cir. 1968); *Taussig v. Wellington Fund, Inc.*, 313 F.2d 472, 475–76 (3d Cir. 1963) (finding private right of action under 35(d)); *Brown v. Bullock*, 294 F.2d 415, 421 (2d Cir. 1961) (implying private right under §§ 15 and 37)); *In re Nuveen Fund Litig.*, 1996 U.S. Dist. LEXIS 8071, at * No. 94- C-360 (N.D. Ill. June 11, 1996) (implying private rights of action under §§ 34 (b), 36(a)); *Langner v. Brown*, 913 F. Supp. 260, 268–70 (S.D.N.Y. 1996) (implying private rights of action for §§ 10(a), 36(b), 17(a), 17(d), 20); *Blatt v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 916 F. Supp. 1343, 1349 (D.N.J. 1996) (implying private rights of action under §§ 7(d), 13(a)(3)); *Carr v. Equistar Offshore, Ltd.*, 1995 U.S. Dist. LEXIS 13703, at * 42–45 (S.D.N.Y. Sept. 21, 1995) (finding private right of action under § 7(d)); *Seidel v. Lee*, 1994 U.S. Dist. LEXIS 21534, at * 20–24 (D. Del. Oct. 14, 1994) (implying rights of action under §§ 36(a), 56(a), 57(a), 57(d)), 17(j)); *In re ML-Lee Acquisition Fund II, L.P.*, 848 F. Supp. 527, 541 (D. Del. 1994) (finding private rights of action under §§ 17(j), 36, 48, 57).

1981) (recognizing implied rights of action for damages under section 36(a) of Investment Company Act where advisers or directors breach fiduciary duty); *McLachlan v. Simon*, 31 F.Supp.2d 731, 737 (N.D.Cal.1998) (clearly holding that a private right of action exists under 36(a)); *Young v. Nationwide Life Ins. Co.*, 2 F.Supp.2d 914, 925–26 (S.D. Texas 1998) (stating, "this Court is also persuaded that a private cause of action should and does exist under § 36(a) of the ICA"); *In re Nuveen Fund Litig.*, No. 94-C-360, 1996 WL 328006, at *6 (N.D.Ill. June 11, 1996) ("Accordingly, the court accepts Magistrate Judge Bobrick's recommendation to imply private rights of action under ICA § 34(b) and ICA § 36(a)"); *Seidel v. Lee*, No. Civ A. 93-494, 1994 WL 913930, at * 2 (D.Del. Oct. 14, 1994) (refusing to dismiss plaintiffs' 36(a) individual claims); *In re ML-Lee Acquisition Fund II, L.P.*, 848 F.Supp. 527, 539–45 (D.Del.1994) ("Thus, the Court believes Congress intended courts to continue to imply private rights of action for conduct proscribed under section 36(a)"); *Esplin v. Hirschi*, 402 F.2d 94, 103 (10th Cir.1968) (court considering issue of private right of action on its own motion and holding one exists); *Levitt v. Johnson*, 334 F.2d 815, 819 (1st Cir.1964) (finding private right of action was consistent with policy and case law), *Bancroft Convertible Fund, Inc. v. Zico Inv. Holdings, Inc.*, 825 F.2d 731, 735 (3d Cir.1987) (holding that creation of private right of action under 36(b) did not destroy private rights of action under other sections of the ICA). Only the Eighth Circuit refused to imply a private cause of action, but that holding was thrown into doubt by a later decision of that circuit. *See Brouk v. Managed Funds, Inc.*, 286 F.2d 901, 912 (8th Cir.1961), *cert. denied*, 366 U.S. 958), *vacated as moot per cur.*, 369 U.S. 424 (1962), *later questioned in Greater Iowa Corp. v. McLendon*, 378 F.2d 783, 793 (8th Cir.1967).

Notably, in a case ignored by Defendants, the Third Circuit has held that implied private rights of action under the ICA are proper. *Bancroft Convertible Fund v. Zico*, 825 F.2d 731, 733. Defendants assert that recent case law in district courts, holding that no private right of action exists

under isolated federal statutes, unravels the decades of specific precedent to the contrary.  However, as Defendants recognize, in determining whether to imply a private right of action, a court must look to the congressional intent, statutory language, and the statute's legislative history.   The Third Circuit thoroughly considered all these issues in *Bancroft* and recognized an implied right of action under section 36(a) and other sections of the ICA.   The Congressional declaration of policy for the ICA states: "it is hereby declared that the policy and purposes of this title, in accordance with which the provisions of this title shall be interpreted, and are to mitigate and, so far as is feasible, to eliminate the conditions enumerated in this section which adversely affect the national public interest and the interest of investors." 15 U.S.C. § 80a-1.  Discussing the issue of whether creating a private right of action in one portion of the ICA eliminates the implied private right of action in another, the *Bancroft*-court stated, "Clearly, the Committee Report expressly approves the position of those courts which, following the 1970 amendments, held that private causes of action should be implied from the Investment Company Act."  *Bancroft*, 825 F.2d at 736.

In addition, the Third Circuit relied on legislative history from 1980 where Congress expressly stated that the court should imply private rights of action under the ICA:

> "*The Committee wishes to make plain that it expects the courts to imply private rights of action under this legislation*, where the plaintiff falls within the class of persons protected by the statutory provision in question. Such a right would be consistent with and further Congress' intent in enacting that provision, and where such actions would not improperly occupy an area traditionally the concern of state law. In appropriate instances, for example, breaches of fiduciary duty involving personal misconduct should be remedied under Section 36(a) of the Investment Company Act. With respect to business development companies, *the Committee contemplates suits by shareholders as well as by the Commission, since these are the persons the provision is designed to protect, and such private rights of action will assist in carrying out the remedial purposes of Section 36.*"

*Bancroft*, 825 F.2d at 735 (quoting House Report on Pub. L. No. 96-477 (1980) (emphasis added)).

In sum, the Third Circuit, after a thorough analysis of the statutory language, congressional intent, and legislative history, found implied private rights of action under the ICA and specifically section 36(a).   Accordingly, this Court should decline Defendants' invitation to depart from this controlling precedent.

## 2.   Plaintiffs Have Sufficiently Plead a Claim under ICA 36(b)

ICA Section 36(b) provides an equitable remedy for breaches of fiduciary duty by Fund advisors and their affiliates.  While there must be some relationship between the fees paid to the Fund Defendants and the wrongful conduct alleged, the focus of Plaintiffs' allegations need not be entirely on fees.  For example, courts  have "permitted challenged under section 36(b) for breaches of fiduciary duty as long as they result in or pertain to excessive fees." *Rohrbaugh v. Inv. Co. Inst.*, 2002 U.S. Dist. LEXIS 13401, *32 (D.D.C. July 2, 2002); *see also Galfand v. Chestnutt Corp.*, 545 F.2d 807, 811-12 (2d Cir. 1976)(permitting a §36(b) claim against an investment adviser who withheld information regarding his proposed contract for management fees.)

Plaintiffs have alleged that as a result of their systematic breaches of fiduciary duty, Defendants are not entitled to any compensation from Plaintiffs and the class. Compl. at ¶¶ 1, 33, 48. *Krantz v. Prudential Invs. Fund Mgmt. L.L.C.*, 77 F.Supp.2d 559, 565 (D.N.J. 1999)(holding that "receipt of compensation while breaching a fiduciary duty violates Section 36(b), 15 U.S.C. § 80a-35(b)"); *Letsos v. Century 21-New West Realty*, 675 N.E.2d 217 (Ill.App. 1996); *Royal Carbo Corp. v. Flameguard, Inc. et al.*, 229 A.D.2d 430 (N.Y. App. Div. 1996) ("it is well settled that one who owes a duty of fidelity to a principal and who is faithless in the performance of his or her services is generally not entitled to recover compensation, whether commissions or salary"); RESTATEMENT (SECOND) OF AGENCY § 469 (1958) ("An agent is entitled to no compensation for conduct which is disobedient or which is a breach of his duty of loyalty; if such conduct constitutes

a willful and deliberate breach of his contract of services, he is not entitled to compensation even for properly performed services for which no compensation is apportioned"). As such, Plaintiffs have alleged that *any and all* compensation Defendants received for their services to fund shareholders is excessive.

Defendants' argument that Plaintiffs have failed to plead with sufficient specificity his claims with respect to the connection between their breaches of fiduciary duty and excessive compensation implies a heightened pleading standard that does not apply to ICA claims. To sufficiently plead ICA claims, Plaintiffs must set forth only "a short and plain statement of the claim showing that the pleader is entitled to relief." Federal Rule of Civil Procedure 8(a)(2), *Migdal v. Rowe-Price Fleming Int'l*, 248 F.3d 321, 325-25 (4th Cir. 2001). Plaintiffs need only provide a "factual basis for believing that a legal violation has actually occurred." *Migdal,* 248 F.3d at 328. "It is unnecessary for the plaintiff to set forth evidentiary details to support this allegation," or to plead evidentiary support for each element of the claim which must be established at trial. *Pfeiffer v. Bjurman, Barry & Assocs.*, 2004 U.S. Dist. LEXIS 16924, at *15 (S.D.N.Y. Aug. 26, 2004) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)).

Plaintiffs have established the sufficient nexus between Defendants' actions, or lack thereof, and the excessive fees they have received from Plaintiffs and other putative Class Members as a result. Accordingly, Plaintiffs have adequately plead a claim under ICA § 36(b).

### 3.    ICA  § 47(b) Provides a Remedy for Violations of Other ICA Sections

As Defendants recognize,  ICA section 47(b) provides a remedy rather than a distinct cause of action or basis for liability. *Galfand v. Chestnutt Corp.*, 545 F.2d 807, 813–14 (2d Cir. 1976). The section provides an equitable remedy upon a showing of a violation of other sections of the ICA, stating: "[a] contract that is made, or whose performance involves, a violation of this

14

subchapter ... is unenforceable by either party.  15 U.S.C. § 80a-46(b).  Therefore, Plaintiffs do not

need to show independent standing to pursue a claim under section 47(b).  Instead, Plaintiffs'

Complaint  seeks the  relief provided by 47(b) (rescission of the contract and forfeiture of fee)  as

an equitable  remedy for Defendants' violation of sections 36(a) and 36(b) of the ICA.   Complaint

¶¶ 46-48.

### C.    PLAINTIFFS HAVE STANDING TO BRING CLAIMS AGAINST ALL FUNDS WITHIN THE GARTMORE FAMILY OF FUNDS

Defendants' entire argument regarding standing is based upon the incorrect premise that

Plaintiffs' standing is determined by the mutual funds owned rather than by the investment company

which  issues  the  mutual  funds.   All analysis and argument proffered, is based upon this faulty

predicate.  As will be shown, Plaintiffs have direct standing to bring these claims for fifty of the

fifty-one Gartmore mutual funds, and the Defendants' argument regarding the one fund for which

direct standing does not exist is premature.

### 1.    Plaintiffs Have Standing to Bring a Direct Action Against the Advisors, Directors, and Affiliates of the Investment Company of Which They Own Shares

Mutual funds are not legal entities, are not organized in any corporate form, and are not

required to register under the Investment Company Act or either of the Securities Acts.  Investment

companies, on the other hand, are legal entities, are organized under state law, and are registered

with the SEC.  15 U.S.C. § 80a-8.  Investment companies can and do issue series of shares of mutual

funds.  Mutual fund families may be comprised of one or more investment companies, which in turn

may be comprised of one or more series of mutual funds.  Mutual funds themselves are merely series

of shares of registered investment companies–in essence, they are little more than accounting entries

or a product sold and marketed for the purpose of generated pools of fee-paying customers for the

investment advisors.  *See, e.g.* Riggs & Park, *supra*, 112 BANKING LAW JOURNAL at 766 (1995).

Recognizing this important distinction between mutual funds and investment companies, the ICA expressly grants standing to holders of registered investment companies, not mutual funds. *See* 15 U.S.C. 80a-35. Section 36(b) of the ICA provides; "An action may be brought under this subsection . . . by a security holder of such *registered investment company* on behalf of such company." 15 U.S.C. 80a-36(b) (emphasis added). Section 36(a) provides a cause of action for breach of fiduciary duty "in respect of any *registered investment company*." 15 U.S.C. 80a-36(a) (emphasis added).

Plaintiff Caroline Hamilton owned the Gartmore Total Return Fund and the Nationwide Fund. Plaintiff James Jacobs owns the Gartmore U.S. Growth Leaders Long-Short Fund. These three funds are each a series of the investment company the Gartmore Mutual Funds Trust.[8] *See* Statement of Additional Information for Gartmore Mutual Funds (Exhibit 4).[9] Thus, Plaintiffs have individual standing to pursue claims involving fifty of the fifty-one funds within the Gartmore family.

### 2. Defendants' "Standing" Argument Is Premature Prior to a Motion for <u>Class Certification</u>

Once individual standing has been established as Plaintiffs have above, the analysis for the purpose of the Motion to Dismiss is concluded. The separate issue of whether a plaintiff can represent a putative class depends solely on whether the plaintiff meets the requirements of Rule 23 and is thus rightfully preserved for the class certification stage. *See, e.g. Payton v. County of Kane*, 308 F.3d 673, 680 (7th Cir. 2002). As stated by the Supreme Court in *Sosna v. Iowa*:

---

[8] Plaintiffs' Complaint incorrectly refers to this entity as Gartmore Mutual Funds, Inc.

[9] The Gartmore fund family is comprised of two investment companies. In addition to the Gartmore Mutual Funds Trust, the other investment company is the Gartmore Mutual Funds II Trust which has the Gartmore Focus Fund as its only series. Thus, the Gartmore Mutual Funds Trust owned by Plaintiffs make up fifty of the fifty-one mutual funds within the Gartmore family of funds.

> A named plaintiff in a class action must show that the threat of injury in a case such as this is "real and immediate," not "conjectural" or "hypothetical." . . . This conclusion does not automatically establish that appellant is entitled to litigate the interests of the class she seeks to represent, but it does shift the focus of examination from the elements of justiciability to the ability of the name plaintiff representative to "fairly and adequately protect the interests of the class." Rule 23 (a).

419 U.S. 393, 402-403 (1975)(citations omitted).

As to the one Gartmore fund belonging to an investment company of which neither Plaintiffs owns a fund, Defendants advance a Rule 23 inquiry under the guise of a "standing" argument. This Rule 23 analysis involves an examination of various factual issues and is not properly undertaken in a motion to dismiss. *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 (1982) ("[T]he class determination generally involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" (citations and internal quotation marks omitted)).

The critical distinction between Article III standing and the Rule 23 inquiry was clarified in *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410 (6th Cir. 1998). In *Fallick*, an employee alleged that Nationwide breached its fiduciary duties with respect to the ERISA benefit plan of which he was a member and other ERISA plans of which he was not a member. The district court dismissed the claims as to all ERISA plans other than Fallick's plan on standing grounds. *Id.* at 411-12. The Sixth Circuit reversed, holding that the district court's reasoning was "fundamentally flawed" because it confused the issues of Article III standing for a plaintiff with the Rule 23 issues applicable to his ability to sue on behalf of a class. *Id.* at 422. The court concluded that "once a potential ERISA class representative establishes his individual standing to sue his own ERISA-governed plan, there is no additional constitutional standing requirement related to his suitability to represent the putative class of members of other plans to which he does not belong." *Id.* at 424.

17

The case law is clear that once a putative class representative has established individual standing, all further standing analysis stops until the class certification stage. Defendants are improperly attempting to incorporate class certification issues into the motion to dismiss.

>   **3.     Plaintiffs May Represent Other Members of the Putative Class
>           Since Their Claims Are Based on the Same Legal Theories and
>           Arise from the Same Scheme and Course of Conduct**

Although analysis of this issue is premature, the case law makes clear that, upon a showing that the requirements of Rule 23 are met, a named plaintiff may represent a class of investors that includes investors in funds in different investment companies within the same mutual fund family and managed by the same advisors.[10] This is so because of the substantially identical nature of the process, or lack thereof, for filing proofs of claim of the affected funds in the same mutual fund family, and the close interrelationship and juridical links of all the funds and persons and entities in the same mutual fund complex with each other. *See In re: Dreyfus Aggressive Growth Mut. Fund Litig.*, 2000 U.S. Dist. LEXIS 13469 (S.D.N.Y. Sept. 20, 2000)(certifying named plaintiffs who invested in the Dreyfus Aggressive Growth Fund to represent purchasers in the Dreyfus Premier Aggressive Growth Fund); *Fallick*, 162 F.3d at 412 (an individual in one ERISA plan can represent

---

[10]     Even if it had merit, Defendants' "standing" argument would not even provide basis for denial of class certification. If any of Defendants' contentions were legitimate, there are more sensible procedural mechanisms for addressing these issues at the class certification stage. For instance, the Court may allow Plaintiffs to proceed and add named plaintiffs at the class certification stage, after the close of discovery, or at another point prior to trial, or the Court may order Plaintiffs to provide a list of additional plaintiffs, who can be added, and the Court can deem the complaints mended *nunc pro tunc* in this regard, if the court deems it necessary.

a class of participants in numerous plans other than his own); *Hicks v. Morgan Stanley & Co.*, 2003

U.S. Dist. LEXIS 11972, at *11 (S.D.N.Y. July 16, 2003).[11]

Each mutual fund within the Gartmore fund family was advised by the same investment advisors, and the claims of Plaintiffs and putative class members are based on the same legal theories. Every holder of each Gartmore fund suffered the same type of injury as a result of Defendants' failure to fulfill their respective fiduciary duties. Because of the dominant role played by the fund advisors and parents, by proving their claims, Plaintiffs will substantially prove the claims of all other class members. *See, e.g., In re: Sumitomo Copper Litig.*, 182 F.R.D. 85, 94-95 (S.D.N.Y. 1998) ("Rule 23(a)(3) is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability" (quoting *In re: Drexel Burnham Lambert Group*, 960 F.2d 285, 291 (2d Cir. 1992)). It has been established that Plaintiffs have individual standing to bring claims involving fifty of the fifty-one funds within the Gartmore family. The fact that Plaintiffs do not own shares in the remaining fund will not be a significant issue at the class certification stage of this case.

---

[11]     *Cf. In re Prudential Sec. Inc.. Ltd. P'shp Litig.*, 163 F.R.D. 200, 208 (S.D.N.Y. 1995) (class representatives were not required to have invested in all limited partnerships at issue, where complaint alleged a "uniform course of improper conduct and standardized sales approach applied by defendants"); *Maywalt v. Parker & Parsley Petroleum Co.*, 147 F.R.D. 51, 56-57 (S.D.N.Y. 1993) (plaintiffs who invested in three limited partnerships could represent persons who had invested in two other limited partnerships, where the complaint alleged that investors in all five limited partnerships were victims of a single pattern of fraud by defendants).

## CONCLUSION

Plaintiffs have standing to file the claims contained in his complaint, and have plead them sufficiently.  Accordingly, Defendants' Motion to Dismiss should be denied.

Dated: May 9, 2005                              Respectfully submitted,


By:      /s/ *Marc L. Ackerman*
         Evan Smith
         Marc L. Ackerman
         **Brodsky & Smith LLC**
         Two Bala Plaza
         Suite 602
         Bala Cynwyd, PA 19004
         (610) 667-6200




         Randall K. Pulliam
         **BARON & BUDD, P.C.**
         3102 Oak Lawn Ave.
         Suite 1100
         Dallas, Texas 75219-4281
         (214) 521-3605
         (214) 520-1181 fax

         Hank Bates
         J. Allen Carney
         **CAULEY BOWMAN CARNEY & WILLIAMS**
         11311 Arcade Dr., Suite 200
         Little Rock, Arkansas 72212
         (501) 312-8500
         (501) 312-8505 fax

         **ATTORNEYS FOR PLAINTIFFS**

20