## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAROLINE HAMILTON, ET AL )<br><br>Plaintiffs, )<br><br>v. )<br> )<br>CHARLES E. ALLEN, ET AL )<br><br>Defendants. )<br>) | Case No. 2:05-cv-110 |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF THE
## GARTMORE DEFENDANTS' MOTION TO DISMISS

Robert C. Heim
Michael S. Doluisio
Scott A. Thompson
Kristina C. Evans
Dechert LLP
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, PA  19103-2793
(215) 994-4000

Attorneys for the Gartmore Defendants

Dated:  May 24, 2005

# TABLE OF CONTENTS

**Page**

I.   COUNTS I, II, III, AND V SHOULD BE DISMISSED BECAUSE THEY
CANNOT BE BROUGHT AS DIRECT SHAREHOLDER CLAIMS ........................... 1

II.  COUNT III SHOULD BE DISMISSED BECAUSE THERE IS NO PRIVATE
RIGHT OF ACTION UNDER SECTION 36(A) OF THE ICA ...................................... 4

III. PLAINTIFFS' SECTION 36(b) CLAIM SHOULD BE DISMISSED ............................ 8

    A.   Alleging A General Breach Of Fiduciary Duty Is Not Sufficient To
Establish A Claim Under Section 36(b)................................................................. 8

    B.   Plaintiffs Fail To Plead Facts Sufficient To Establish An Excessive Fees
Claim................................................................................................................ 10

IV.  PLAINTIFFS ARE ENTITLED TO NO REMEDY UNDER SECTION 47(b)............. 11

V.   PLAINTIFFS HAVE NO STANDING TO BRING CLAIMS RELATING TO
FUNDS THEY DID NOT OWN.................................................................................. 12

    A.   Plaintiffs Do Not Have Standing To Bring Claims Regarding Funds They
Did Not Own, Even If The Funds Were Issued By The Same Investment
Company......................................................................................................... 12

    B.   Plaintiffs Must Establish Standing Now, Without Regard to Class
Certification Principles ..................................................................................... 14

# TABLE OF AUTHORITIES

## FEDERAL CASES

In re Agent Orange Prod. Liab. Litig.,
    Nos. MDL 381, 04-CV-400, 2005 WL 729177 (E.D.N.Y. Mar. 28, 2005) ......................8

Alexander v. Sandoval,
    532 U.S. 275 (2001)..................................................................................4, 5, 6, 7

Bancroft Convertible Fund, Inc. v. Zico Inv. Holdings, Inc.,
    825 F.2d 731 (3d Cir. 1987)..............................................................................5, 6, 7

Benak v. Alliance Capital Mgmt., LLP,
    No. Civ. A. 01-5734, 2004 WL 1459249 (D.N.J. Feb. 9, 2004) ...................9, 10

Blatt v. Merrill Lynch, Pierce, Fenner & Smith Inc.,
    916 F. Supp. 1343 (D.N.J. 1996) .....................................................................5

Carr v. Equistar Offshore, Ltd.,
    94- Civ.-5567, 1995 WL 562178 (S.D.N.Y. Sept. 21, 1995) ...........................5

Central Bank of Denver v. First Interstate Bank of Denver,
    511 U.S. 164 (1994)........................................................................................7

Chamberlain v. Aberdeen Asset Mgmt. Ltd.,
    No. 02 CV 5870(SJ), 2005 WL 195520 (E.D.N.Y. Jan. 21, 2005) ...........6, 7, 8

Chevalier v. Baird Savings Assoc.,
    66 F.R.D. 105 (E.D. Pa. 1975) .......................................................................14

Corr. Servs. Corp. v. Malesko,
    534 U.S. 61 (2001)..........................................................................................5

Daily Income Fund v. Fox,
    464 U.S. 523 (1984)........................................................................................1

In re Eaton Vance Corp. Sec. Litig.,
    219 F.R.D. 38 (D. Mass. 2003)........................................................................15

In re Eaton Vance Corp. Sec. Litig.,
    220 F.R.D. 162 (D. Mass. 2004)......................................................................15

Esplin v. Hirschi,
    402 F.2d 94 (10th Cir. 1968) ................................................................1

Fallick v Nationwide Mutual Ins. Co.,
    162 F.3d 410 (6th Cir. 1998) ..............................................................15

Furst v. Feinberg
    54 Fed. Appx. 94, 99 (3d Cir. 2002) ....................................................3

Gonzaga Univ. v. Doe,
    536 U.S. 273 (2002)..............................................................................5

Green v. Fund Asset Mgmt., L.P.,
    286 F.3d 682 (3d Cir. 2002)...........................................................9, 10

Green v. Nuveen Advisory Corp.,
    186 F.R.D. 486 (N.D. Ill. 1999) .......................................................2, 3

Green v. Nuveen Advisory Corp.,
    295 F.3d 738 (7th Cir. 2002) ................................................................9

Herman v. Steadman,
    50 F.R.D. 488 (S.D.N.Y. 1970) ...........................................................2

Kamen v. Kemper Fin. Servs.,
    500 U.S. 90 (1991)................................................................................1

Kauffman v. Dreyfus Fund, Inc.,
    434 F.2d 727 (3d Cir. 1970)..........................................2, 3, 4, 14, 15

King v. Douglass,
    973 F. Supp. 707 (S.D. Tex. 1996) ......................................................2

Krantz v. Prudential Inv. Fund Mgmt. LLC,
    305 F.3d 140 (3d Cir. 2002)...........................................................10, 11

Krantz v. Prudential Invs. Fund Mgmt.,
    77 F. Supp. 2d 559 (D.N.J. 1999) ...................................................9, 10

Langner v. Brown,
    913 F. Supp. 260 (S.D.N.Y. 1996) .......................................................5

In re ML-Lee Acquisition Fund II, L.P.,
        848 F. Supp. 527 (D. Del. 1994)............................................................................5

Marcus v. Putnam,
        60 F.R.D. 441 (D. Mass. 1973)............................................................................2

McLachlan v. Simon,
        31 F. Supp. 2d 731 (N.D. Cal. 1998) ...................................................................5

In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.,
        272 F. Supp. 2d 243 (S.D.N.Y. 2003)...............................................................2, 6

meVC Draper Fisher Jurvetson Fund I, Inc. v. Millennium Partners L.P.,
        260 F. Supp. 2d 616 (S.D.N.Y. 2003)...................................................................7

Meyer v. Oppenheimer Mgmt. Corp.,
        764 F.2d 76 (2d Cir. 1985)....................................................................................5

Migdal v. Rowe Price-Fleming Int'l,
        248 F.3d 321 (4th Cir. 2001) ....................................................................9, 10, 11

In re Nuveen Fund Litigation,
        No. 94-C-360, 1996 U.S. Dist. LEXIS 8071 (N.D. Ill. June 11, 1996)...............5

Olmsted v. Pruco Life Ins. Co.,
        283 F.3d 429 (2d Cir. 2002).............................................................................5, 6, 7

Panfil v. Scudder Global Fund Inc.,
        No. 93 C. 7430, 1993 WL 532537 (N.D. Ill. Dec. 20, 2003) ..............................4

Prado-Steinman v. Bush,
        221 F.3d 1266 (11th Cir. 2000) ..........................................................................14

Rohrbaugh v. Inv. Co. Inst.,
        CIV A. No. 00-1237, 2002 WL 31100821 (D.D.C. July 2, 2002)........................9

Seidel v. Lee,
        No. Civ.-A.-93-494, 1994 WL 913930 (D. Del. Oct. 14, 1994)..........................5

Strougo v. Bassini,
        282 F.3d 162 (2d Cir. 2002)........................................................................1, 2, 6

Touche Ross & Co. v. Redington,
    442 U.S. 560 (1979)....................................................................................................5

In re Value Line Special Situations Fund Litig.,
    No. M 19-103(CHT),1974 WL 412 (S.D.N.Y. June 13, 1974).........................................15

In re Van Wagoner Funds, Inc. Sec. Litig.,
    No. 02-03383, 2004 WL 2623972 (N.D. Cal. July 27, 2004) .............................................6

Weiner v. Bank of King of Prussia,
    358 F. Supp. 684 (E.D. Pa. 1973) .................................................................................14

Williams v. Bank One Corp.,
    No. 03 C 8561, 2003 WL 22964376 (N.D. Ill. Dec. 15, 2003) .........................................13

Young v. Nationwide Life Ins. Co.,
    2 F. Supp. 2d 914 (S.D. Tex. 1998) ................................................................................5

## STATE CASES

Carlson v. Rabkin,
    789 N.E.2d 1122 (Ohio App. 2003).................................................................................3

Grand Council of Ohio v. Owens,
    620 N.E.2d 234 (Ohio App. 1993)...................................................................................3

Letsos v. Century 21-New West Realty,
    675 N.E.2d 217 (Ill. App. 1996) ...................................................................................10

Mann v. Kemper Fin. Co., Inc.,
    618 N.E.2d 317 (Ill. App. 1993) ....................................................................................4

Royal Carbo Corp. v. Flameguad, Inc. et. al.,
    229 A.D.2d 430 (N.Y. App. Div. 1996) ........................................................................10

## FEDERAL STATUTES

15 U.S.C. § 80a-35(b) ..........................................................................................................9

## OTHER AUTHORITIES

Adoption of Rule 18f-2 Under the Investment Company Act To Insure Fair and
Equitable Treatment of Shareholders of Investment Companies of the Series Type, ICA
Release No. 7276, Fed. Sec. L. Rep. ¶ 78,933 (Aug. 8, 1972) ...............................................13, 14


Karen Cusenbary et al., 12 Ohio Jur. 3d Business Relationships § 475 (2004) .............................3

In re Mutual Series Fund, Inc.,
        SEC No Action Letter, 1995 WL 693394 (Nov. 7, 1995) .................................................14

## INTRODUCTION

Plaintiffs' brief in opposition to the Gartmore Defendants' motion to dismiss ignores or misconstrues controlling precedent, and largely fails to respond to the Gartmore Defendants' arguments. The Gartmore Defendants therefore provide this brief reply to address the shortcomings of plaintiffs' opposition and to correct plaintiffs' misstatements of law.

## I.   COUNTS I, II, III, AND V SHOULD BE DISMISSED BECAUSE THEY CANNOT BE BROUGHT AS DIRECT SHAREHOLDER CLAIMS.

As set forth in the Gartmore Defendants' opening memorandum, Counts I, II, III and V should be dismissed because those claims can be brought, if at all, only in a derivative action. In response, plaintiffs raise a host of arguments. None is persuasive.

Plaintiffs first argue that "numerous courts have found that an investor may bring a direct action . . . under the ICA." Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss ("Pls' Mem.") at 3. The majority of the cases plaintiffs cite, however, involve Section 36(b) claims, i.e., claims that need not be brought derivatively and which defendants did not move to dismiss on that basis. See, e.g., Kamen v. Kemper Fin. Servs., 500 U.S. 90 (1991); Daily Income Fund v. Fox, 464 U.S. 523 (1984). Other cases plaintiffs cite do not even address the direct/derivative issue. See, e.g., Esplin v. Hirschi, 402 F.2d 94 (10th Cir. 1968).

One case plaintiffs cite, Strougo v. Bassini, 282 F.3d 162, 174-75 (2d Cir. 2002), does, in fact, permit direct claims to be brought by a fund shareholder. Those claims, however, were based on a coercive shareholder rights offering that distinctly injured certain (but not all) shareholders and "did not derive from a reduction in the value of the Fund's assets." Id. at 175. In that same case, the Second Circuit affirmed the dismissal of direct claims that were based on a depletion of "the corporation's assets," because that is "precisely the type of injury to the

- 1 -

corporation that can be redressed . . . only through a suit brought on behalf of the corporation."

Id. Thus, rather than helping plaintiffs, Strougo makes clear that their claims are derivative, not

direct.[1]

In the hopes of showing that they suffered injury separate from the Funds,

plaintiffs next argue that, "[b]ecause of the unique structure and operation of mutual funds and

investment companies, it is the individual investors . . . who directly suffer the consequences of

Defendants' failure to ensure participation in securities class action settlements." Pls' Mem. at 5.

Specifically, plaintiffs argue that because any "decrease in fund assets is immediately passed on

or allocated to the fund investors" in form of the "per share net asset value," injuries to the fund

directly impact shareholders. Id. at 5-6.  The Third Circuit has expressly considered -- and

rejected -- this very argument.

Specifically, in Kauffman v. Dreyfus Fund, Inc., 434 F.2d 727 (3d Cir. 1970) --

discussed at length in defendants' opening memorandum but ignored by plaintiffs -- the Third

Circuit flatly rejected this exact argument, reasoning that it "fails to properly appreciate, or seeks

to ignore, the fundamental tenet of corporation law which treats the corporate body as an entity --

indeed, as a person -- separate and distinct from those who own shares of its stock." Id.  The

court also held that the fact "[t]hat the worth of a share of appellee's stock is directly

proportionate to the value of a mutual fund's net assets is insufficient to destroy these separate

---

[1]     See also In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig., 272 F. Supp. 2d
243, 259 (S.D.N.Y. 2003) (where "a plaintiff shareholder has not sustained any injury
distinct from that allegedly inflicted upon an investment company, courts have routinely
dismissed the claims asserted directly, rather than derivatively"); see also Green v.
Nuveen Advisory Corp., 186 F.R.D. 486 (N.D. Ill. 1999) (applying Massachusetts law to
dismiss direct claims under Sections 34(b) and 36(a) of ICA); King v. Douglass, 973 F.
Supp. 707 (S.D. Tex. 1996) (dismissing direct claims under Section 36(a)); Marcus v.
Putnam, 60 F.R.D. 441, 444 (D. Mass. 1973) (applying Massachusetts law to dismiss
direct ICA claims); Herman v. Steadman, 50 F.R.D. 488, 489-90 (S.D.N.Y. 1970)
(dismissing direct ICA claims).

identities, to alter the basic shareholder-corporation relationship, and to thereby confer upon appellee legal rights peculiar to the corporation." Id.

Plaintiffs next claim that a derivative action would not "as accurately or as justly compensate the class of individuals harmed by the Defendants' conduct" because recovery in a derivative action would benefit present shareholders but would not compensate shareholders who sold their stock. Pls' Mem. at 7. Any such "injustice," however, is inherent in all derivative actions. As the Third Circuit has explained: "shareholders who sell their shares always forfeit the right to sue in derivative claims. If we were to allow a direct claim because shareholders sold their shares and, thus, lost their right to sue, the albeit thin line between direct and derivative claims would disappear entirely. . . ." Furst v. Feinberg, 54 Fed. Appx. 94, 99 (3d Cir. 2002).

Finally, plaintiffs argue that because defendants allegedly breached duties owed directly to shareholders, shareholders may bring direct claims. This argument is flawed. First, the test under Massachusetts and Ohio law is not whether the defendant breached a duty directly to the plaintiffs. The test, instead, is whether the plaintiffs are "injured in a way that is separate and distinct from an injury to the corporation." Carlson v. Rabkin, 789 N.E.2d 1122, 1126-27 (Ohio App. 2003); see, e.g., Green v. Nuveen Advisory Corp., 186 F.R.D. 486, 489-90, 492-93 (N.D. Ill. 1999) (applying Massachusetts law, dismissing direct ICA and common law fiduciary claims); Grand Council of Ohio v. Owens, 620 N.E.2d 234, 238 (Ohio App. 1993) (applying Ohio law, dismissing negligence and breach of fiduciary duty claims that should have been brought derivatively). Moreover, plaintiffs have not cited any Ohio or Massachusetts law holding that defendants -- which include trustees, advisors, and subadvisors -- owe duties directly to shareholders, rather than to the Funds. See, e.g., Karen Cusenbary et al., 12 Ohio Jur. 3d Business Relationships § 475 (2004) ("The directors owe a fiduciary obligation to the

corporation, and indirectly to the shareholders.").[2]  Finally, plaintiffs' argument proves too much.  Even if, as plaintiffs argue, the defendants breached a duty owed directly to shareholders, such a breach, without more, would be an insufficient basis for permitting a direct claim.  Indeed, if a breach of duty by a fiduciary always gave rise to direct claims, then there could never be a derivative claim against a fiduciary for mismanagement.

Here, plaintiffs assert classic derivative claims.  They allege that all shareholders have been injured by a diminution in the assets of the funds.  See Compl. ¶¶ 24, 35.  Thus, the claims are derivative.  Kauffman, 434 F.2d at 732 (shareholder cannot maintain a direct action where "the only injury to the shareholder is the indirect harm which consists in the diminution in value of his corporate shares resulting from the impairment of corporate assets.").  Accordingly, because plaintiffs have not brought derivative claims or even attempted to comply with Federal Rule of Civil Procedure 23.1, Counts I, II, III, and V should be dismissed.

## II.    COUNT III SHOULD BE DISMISSED BECAUSE THERE IS NO PRIVATE RIGHT OF ACTION UNDER SECTION 36(A) OF THE ICA.

The Supreme Court has held that a court must examine the "text and structure" of a statute when determining whether to imply a private right of action.  Specifically, a private right can be implied only if the statute contains "rights-creating language" that has an "*unmistakable focus* on the benefited class." Alexander v. Sandoval, 532 U.S. 275, 288 (2001);

---

[2]    Even plaintiffs' cases -- which are based on inapplicable Illinois law -- do not permit a direct claim because of the breach of duty to an existing shareholder.  See, e.g., Mann v. Kemper Fin. Co., Inc., 618 N.E.2d 317, 322-23 (Ill. App. 1993) (direct claim permitted where defendants allegedly breached a duty to investors who had been misled by a prospectus -- a prototypical direct claim); Panfil v. Scudder Global Fund, Inc., No. 93 C. 7430, 1993 WL 532537, at *4 (N.D. Ill. Dec. 20, 2003) (not describing the nature of plaintiffs' claims and merely speculating in dicta that the defendant's argument concerning the derivative nature of plaintiffs' claims may not be successful).

<u>Gonzaga Univ. v. Doe</u>, 536 U.S. 273, 286 (2002) (emphasis in original).  Moreover, a plaintiff

must "show that the statute manifests an intent 'to create not just a private right but also a private

remedy.'" <u>Gonzaga</u>, 536 U.S. at 284.  Thus, if Congress has created express private rights of

action elsewhere in the statute, it is not up to the courts to re-write the statutes to add private

rights of action to other parts.  <u>Touche Ross & Co. v. Redington</u>, 442 U.S. 560, 571-74 (1979).

Plaintiffs do not argue that Section 36(a) meets the test set forth in <u>Sandoval</u> and

<u>Gonzaga</u>.  Instead, plaintiffs rely on historical decisions holding that some ICA provisions may

support a private right of action.  But, those old decisions have largely been discredited, as the

Supreme Court has made clear that it will no longer imply private rights of action where there is

no textual basis for doing so.  <u>Corr. Servs. Corp. v. Malesko</u>, 534 U.S. 61, 67 (2001) ("We have

retreated from our previous willingness to imply a cause of action where Congress has not

provided one."); <u>Sandoval</u>, 532 U.S. at 287 (explaining that cases applying the less-rigorous test

are part of an "*ancien regime*").  Indeed, the vast majority of the cases plaintiffs rely upon were

*explicitly* identified as part of the now-discredited *ancien regime* by the Second Circuit in

<u>Olmsted v. Pruco Life Ins. Co.</u>, 283 F.3d 429 (2d Cir. 2002).[3]  The other cases plaintiffs cite,

though not expressly rejected in <u>Olmsted</u>, are nevertheless unpersuasive because they do not

apply current Supreme Court law.

---

[3]    <u>Olmsted</u> lists the following cases cited by plaintiffs as part of the discredited *ancien
regime*: <u>Bancroft Convertible Fund, Inc. v. Zico Inv. Holdings, Inc.</u>, 825 F.2d 731, 736
(3d Cir. 1987); <u>Meyer v. Oppenheimer Mgmt. Corp.</u>, 764 F.2d 76, 88 (2d Cir. 1985);
<u>McLachlan v. Simon</u>, 31 F. Supp. 2d 731, 737 (N.D. Cal. 1998) (§ 35(a)); <u>Young v.
Nationwide Life Ins. Co.</u>, 2 F. Supp. 2d 914, 926 (S.D. Tex. 1998); <u>In re Nuveen Fund
Litig.</u>, No. 94-C-360, 1996 U.S. Dist. LEXIS 8071, at *17 (N.D. Ill. June 11, 1996); <u>Blatt
v. Merrill Lynch, Pierce, Fenner & Smith Inc.</u>, 916 F. Supp. 1343, 1349, 1357 (D.N.J.
1996); <u>Langner v. Brown</u>, 913 F. Supp. 260, 267 (S.D.N.Y. 1996); <u>Carr v. Equistar
Offshore, Ltd.</u> No. 94- Civ.-5567, 1995 WL 562178, at *15 (S.D.N.Y. Sept. 21, 1995);
<u>Seidel v. Lee</u>, No. Civ-A.-93-494, 1994 WL 913930, at *2 (D. Del. Oct. 14, 1994); <u>In re
ML-Lee Acquisition Fund II, L.P.</u>, 848 F. Supp. 527, 539-45 (D. Del. 1994).  <u>See
Olmsted</u>, 283 F.3d at 434 n.4.

The only post-Sandoval case plaintiffs rely upon, Strougo v. Bassini, 282 F.3d 162, 174 (2d Cir. 2002), does not support their argument.  In Strougo, the Second Circuit did not hold that a private right of action exists under Section 36(a).  In fact, that case does not discuss private rights at all.  See id.  Instead, the question presented was whether claims for coercion under the common law and Section 36(a) could be brought in a direct or derivative action, and in particular, whether "Maryland's law of shareholder standing would frustrate the specific federal policy objectives underlying the ICA."  Id. at 165.  Thus, the Second Circuit did not undertake any analysis of whether Section 36(a) gives rise to a private right of action and it does not appear that dismissal on this basis was even requested.  Accordingly, it is clear that Strougo does not express Second Circuit law on private rights of action.  See Olmsted, 283 F.3d at 434 n. 4 (listing the district court's opinion in Strougo as one of the cases representing the *ancient regime*).

In addition, plaintiffs misconstrue the Third Circuit's decision in Bancroft Convertible Fund v. Zico, 825 F.2d 731 (3d Cir. 1987).  Quite simply, plaintiffs' assertion that Bancroft "recognized an implied right of action under 36(a)" is flatly wrong.  Bancroft did not even address Section 36(a).  Instead, it examined whether there was an implied private right of action *under Section 12(d)(1)(A) of the ICA*, a provision having no relevance to this case. Moreover, Bancroft's analysis of even that section is inconsistent with Sandoval.  See Olmsted, 283 F.3d at 434 n.4 (including Bancroft as part of the "*ancien regime*").[4]

---

[4]  Plaintiffs' assertion that "[n]o court or legislative body has explicitly decided that implication of private rights of action under the ICA is improper" is a gross overstatement.  As plaintiffs are well aware, in Chamberlain v. Aberdeen Asset Mgmt. Ltd., No. 02 CV 5870(SJ), 2005 WL 195520, at *4 (E.D.N.Y. Jan. 21, 2005), the Eastern District of New York recently held that there is no private right of action under Section 36(a).  In Olmsted, the Second Circuit determined that no private rights of action existed under two different sections of the ICA - Sections 26(f) and 27(i).  Several courts have held that no implied private right of action exists under Section 34(b).  In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig., 272 F. Supp. 2d 243 (S.D.N.Y. 2003); In

Finally, plaintiffs purport to rely upon legislative history. For various reasons, plaintiffs' argument fails. First, as <u>Sandoval</u> makes clear, it is the statute's "text and structure" which is relevant to whether a private right of action is implied. <u>Sandoval</u>, 532 U.S. at 288. Where, as here, there is overwhelming textual evidence of legislative intent not to provide a private right of action (such as the side-by-side presence of a private right in Section 36(b) and absence of such a right in Section 36(a)), there is "no ambiguity on the question of an implied private right of action that legal context might clarify." <u>Olmsted</u>, 283 F.3d at 435.

Moreover, plaintiffs rely on legislative history that is wholly irrelevant, <u>i.e.</u>, a single House Committee report from 1980 -- ten years **after** Congress created Section 36(a). As the Supreme Court has held, "the interpretation given by one Congress (or a committee or Member thereof) to an earlier statute is of little assistance in discerning the meaning of that statute." <u>Central Bank of Denver v. First Interstate Bank of Denver</u>, 511 U.S. 164, 185 (1994).[5]

* * *

In summary, no case applying the Supreme Court's current test supports a private cause of action under Section 36(a). The only court to consider Section 36(a) in the post-<u>Sandoval</u> era held that there was no implied private right of action. <u>Chamberlain v. Aberdeen</u>

---

re Van Wagoner Funds, Inc. Sec. Litig., No. 02-03383, 2004 WL 2623972, at *11-12 (N.D. Cal. July 27, 2004). And, <u>meVC Draper Fisher Jurvetson Fund I, Inc. v. Millennium Partners, L.P.</u>, 260 F. Supp. 2d 616 (S.D.N.Y. 2003), found no private right of action under Section 12(d)(1)(A) of the ICA, expressly rejecting the Third Circuit's holding in <u>Bancroft</u> to the contrary.

[5]    To the extent it is relevant, the *contemporaneous* legislative history of Section 36(a) supports dismissal of plaintiffs' claim. In 1970, Congress split the original Section 36 into two subsections. It provided for an express right of action for Section 36(b), but provided for enforcement of Section 36(a) to be by "The Commission." Accordingly, there is no reason to believe that Congress intended a private right of action under Section 36(a).

Asset Mgmt. Ltd., No. 02 CV 5870(SJ), 2005 WL 195520, at *4 (E.D.N.Y. Jan. 21, 2005).[6]

Thus, for the foregoing reasons, Count III should be dismissed.

## III.   PLAINTIFFS' SECTION 36(b) CLAIM SHOULD BE DISMISSED.

Plaintiffs make two arguments in response to defendants' motion to dismiss their Section 36(b) claim. They argue, first, that a Section 36(b) claim is stated whenever a fiduciary receives payment after having breached a fiduciary duty. Second, they argue that they have alleged sufficient facts to support a Section 36(b) claim. Neither argument withstands scrutiny.

### A.   Alleging A General Breach Of Fiduciary Duty Is Not Sufficient To Establish A Claim Under Section 36(b).

Plaintiffs' first argument is that, because defendants allegedly breached their fiduciary duties, defendants "are not entitled to any compensation from Plaintiffs and the class." Pls' Mem. at 13. Therefore, according to plaintiffs, "any and all compensation Defendants received for their services to fund shareholders is excessive" for purposes of Section 36(b). Id. at 14. Plaintiffs' argument is wrong.

As an initial matter, adopting plaintiffs' argument would impermissibly expand the scope of Section 36(b). Under plaintiffs' theory, *any* breach of fiduciary duty would give rise to a Section 36(b) claim, so long as the fiduciary received compensation. Plaintiffs' theory, however, is inconsistent with the language of Section 36(b) and with the case law. Section 36(b)

---

[6]   On March 31, 2005, the parties in Chamberlain (as a condition of settlement) moved for vacatur of the court's January 21, 2005 Opinion. The court granted the motion on April 6, 2005, but noted that "this does not constitute a reconsideration of the merits of the case or a negation of the substance of the previously issued Order; rather, the Motion is granted simply in order to permit the parties to proceed to settlement." See Chamberlain Order at 2, Exhibit A. Accordingly, the court's opinion remains persuasive authority. See In re Agent Orange Prod. Liab. Litig., Nos. MDL 381, 04-CV-400, 2005 WL 729177, at *66 (E.D.N.Y. Mar. 28, 2005) ("That the opinion was later vacated does not deprive its reasoning of persuasive power.").

provides that an investment adviser shall be deemed to have a fiduciary duty only "*with respect to* the receipt of compensation for services. . . ." 15 U.S.C. § 80a-35(b) (emphasis added).  In addition, the Third Circuit has held that the "fiduciary duty imposed by Section 36(b) is significantly more circumscribed than common law fiduciary duty doctrines." Green v. Fund Asset Mgmt., L.P., 286 F.3d 682, 685 (3d Cir. 2002).  Indeed, "general breach of fiduciary duty claims which involve merely an incidental or speculative effect on advisory fees are not properly within the scope of Section 36(b)." Migdal v. Rowe Price-Fleming Int'l, 248 F.3d 321, 329 (4th Cir. 2001); Green v. Nuveen Advisory Corp., 295 F.3d 738, 744 n.9 (7th Cir. 2002) ("fund mismanagement issues" are not within the purview of Section 36(b)); Rohrbaugh v. Inv. Co. Inst., CIV. A. No. 00-1237, 2002 WL 31100821, at *8 (D.D.C. July 2, 2002) ("Section 36(b) does not apply to every alleged breach of fiduciary duty by an investment adviser.").

Moreover, a nearly identical attempt to bootstrap a Section 36(b) claim from general allegations of mismanagement has been rejected by a court within the Third Circuit.  In Benak v. Alliance Capital Mgmt., LLP, No. Civ. A. 01-5734, 2004 WL 1459249 (D.N.J. Feb. 9, 2004), the court expressly held:  "The fact that Defendant received payment for its suspect actions does not make the fee arrangement itself improper and does not alone make the claim cognizable under §36(b)." Benak, 2004 WL 1459249 at *7.  The court explained further that, "[a]llowing an ICA claim to proceed in this instance would permit litigants to attack any aspect of an investment adviser's services under §36(b) as long as the adviser was paid a fee for the services" and that "[s]uch an expansive interpretation would run counter to the narrow scope intended for this provision." Id.

Although defendants cited Green and Benak in their opening memorandum, plaintiffs simply ignored those cases.  Instead, plaintiffs rely upon Krantz v. Prudential Invs.

Fund Mgmt., 77 F. Supp. 2d 559 (D.N.J. 1999). But even that case does not support plaintiffs'

position. In Krantz, the court *dismissed* a Section 36(b) claim because, as here, the plaintiff had

characterized "all the fees" as excessive "without pleading any facts that, if true, would

demonstrate that the fee is 'so disproportionately large that it bears no reasonable relationship to

the services rendered." Id. at 565 (citation omitted). On appeal, in Krantz v. Prudential Inv.

Fund Mgmt. LLC, 305 F.3d 140, 143 (3d Cir. 2002), the Third Circuit affirmed the *dismissal* of

the complaint and expressly adopted Migdal v. Rowe Price-Fleming, in which the Fourth Circuit

held that general claims for breach of fiduciary duty do not give rise to a Section 36(b) claim.

Migdal, 248 F.3d at 329. Thus, there is simply no support for plaintiffs' claim that any breach of

duty (in return for compensation) gives rise to a Section 36(b) claim.[7]

### B.   Plaintiffs Fail To Plead Facts Sufficient To Establish An Excessive Fees Claim.

Plaintiffs' second argument is that they have sufficiently pleaded a Section 36(b)

violation. Pls' Mem. at 14. They make this claim even though they do not identify the amount

of advisory fees paid by the funds, do not describe the services performed in return for those

services, and do not plead any other facts required for a Section 36(b) claim. In fact, the very

case relied upon by plaintiffs, Migdal v. Rowe-Price Fleming, shatters their argument. In

---

[7]   Plaintiffs also cite two state court, common law decisions. Neither case supports plaintiffs' Section 36(b) claim. See Letsos v. Century 21-New West Realty, 675 N.E.2d 217 (Ill. App. 1996); Royal Carbo Corp. v. Flameguad, Inc. et. al., 229 A.D.2d 430 (N.Y. App. Div. 1996). As an initial matter, the Third Circuit has expressly held that Section 36(b) provides a "very specific, narrow federal remedy that is more limited than common law doctrines. . . ." Green, 286 F.3d at 685. Moreover, neither case has anything to do with the ICA or even mutual funds. Instead, they focus on whether, in other contexts, one who has breached a fiduciary duty is nonetheless entitled to compensation. See Letsos, 675 N.E.2d 217 (residential real estate contract); Royal Carbo, 229 A.D.2d 430 (duties of employee not to compete with company). Finally, these cases are flatly refuted by the numerous courts that have "emphasized [Section 36(b)'s] inapplicability to allegations of corporate mismanagement." Benak, 2004 WL 1459249, at *7.

<u>Migdal</u>, the Fourth Circuit concluded that "a complaint may not simply allege in a conclusory manner that advisory fees are 'excessive,'" but instead must allege a "fee that is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining." <u>Migdal</u>, 248 F.3d at 326.  Indeed, upon finding that the complaint could not meet this burden, the <u>Migdal</u> court affirmed the dismissal of the complaint.  <u>See also</u> <u>Krantz</u>, 305 F.3d 143 (expressly adopting <u>Migdal</u> and dismissing a Section 36(b) claim "since Plaintiff failed to allege any facts indicating that the fees received were disproportionate to services rendered").

The result should be no different here than in <u>Migdal</u> and <u>Krantz</u>.  In this case, plaintiffs make no allegations about the amount of fees, fail to describe the services provided in return for the fees, and do not even claim that the fees were "excessive."  Instead, they allege that the defendants "breached their duty arising under Section 36(b) by failing to submit Proof of Claim forms."  <u>See</u> Compl. ¶¶ 42-43.  This allegation fails to meet the standards established in <u>Krantz</u> and <u>Migdal</u>.  Accordingly, the Court should dismiss plaintiffs' Section 36(b) claim.[8]

## IV.   PLAINTIFFS ARE ENTITLED TO NO REMEDY UNDER SECTION 47(b).

Although listed as a separate count in their complaint, plaintiffs now concede that Section 47(b) "provides a remedy *rather than a distinct cause of action or basis for liability.*"  Pls' Mem. at 14 (emphasis added).  For this reason alone, Count V should be dismissed.

But even if plaintiffs had not conceded that they have stated no claim, their

---

[8]   Plaintiffs fail to address defendants' argument that plaintiffs are barred from recovering under Section 36(b) because they seek personal recovery, and not recovery "on behalf of the funds" as required by the statute.  <u>See</u> Defs' Mem. at 19-20.  Plaintiffs refusal to abandon their desire for personal recovery under their Section 36(b) claim further militates in favor of its dismissal.

request for Section 47(b) remedies fails for three separate reasons -- each of which was raised in defendants' opening memorandum but ignored by plaintiffs. First, only parties to the advisory contracts have standing to seek Section 47(b) remedies. See Memorandum of Law in Support of the Gartmore Defendants' Motion to Dismiss ("Defs' Mem.") at 21. Second, Section 47(b) remedies are not available here because plaintiffs have failed to plead viable Section 36(a) or Section 36(b) claims. See id. at 10-20, 22. And, third, Section 47(b) remedies are unavailable because plaintiffs have not alleged that the advisory agreements, either on their face or as necessarily performed, violate the ICA. See id. at 22-24. Because plaintiffs cannot recover under Section 47(b), Count V should be dismissed.

## V.   PLAINTIFFS HAVE NO STANDING TO BRING CLAIMS RELATING TO FUNDS THEY DID NOT OWN.

As set forth in defendants' opening memorandum, plaintiffs lack standing to assert claims regarding funds in which they owned no shares. Plaintiffs raise two arguments in response. Neither is persuasive.

### A.   Plaintiffs Do Not Have Standing To Bring Claims Regarding Funds They Did Not Own, Even If The Funds Were Issued By The Same Investment Company.

Plaintiffs argue, first, that they may bring claims relating to any fund that was issued by the investment company which issued the funds they own. Pls' Mem. at 15. In support of this argument, plaintiffs rely on the text of Section 36(a) and 36(b) and upon a Banking Law Journal article. Neither supports plaintiffs' argument.

Section 36(a) and Section 36(b) do not support plaintiffs' argument that they may bring claims regarding funds they did not own. Section 36(a) merely provides that a suit may be brought by the SEC "in respect of any registered investment company," while Section 36(b)

12

allows a suit "by a security holder of such registered investment company." In no way does either statutory provision provide that a plaintiff can sue an investment company for wrongs that may have been committed with respect to *other* funds not owned by the plaintiff.

The Banking Law Journal likewise does not support plaintiffs' argument. That article merely explains the structure of certain mutual funds, i.e., that certain mutual funds represent "[a] series of shares of registered investment companies." Apparently, plaintiffs believe that if a fund is a series of shares -- rather than a separately incorporated entity -- then a plaintiff has standing to assert claims relating to all funds issued by the same investment company. Once again, plaintiffs are wrong.

As an initial matter, a federal district court has flatly rejected a plaintiff's attempt to bring a derivative suit on behalf of all funds issued by a single business trust (including funds plaintiff did not own), even though the funds were not "separately incorporated." Williams v. Bank One Corp., No. 03 C 8561, 2003 WL 22964376, at *1 (N.D. Ill. Dec. 15, 2003). The court likened the investment company and its funds to a parent company and its subsidiaries and reasoned that "[w]hat controls over the other factors . . . is the total separateness of the beneficial interest in the funds." Id. The court thus would not allow the plaintiff to "bootstrap upstream to the business trust and thence downstream to the other separate funds" by virtue of his ownership of shares in two of the funds. Id.

Moreover, the plaintiffs' theory is counter to SEC guidance. The SEC recognizes that mutual funds -- even when not separately incorporated -- should be treated like separate companies. As the SEC has long recognized, "The individual series of such a company are, for all practical purposes, separate investment companies. Each series of stock represents a different group of stockholders with an interest in a segregated portfolio of securities." Adoption of Rule

18f-2 Under the Investment Company Act To Insure Fair and Equitable Treatment of

Shareholders of Investment Companies of the Series Type, ICA Release No. 7276, Fed. Sec. L.

Rep. ¶ 78,933 at 82,017 (Aug. 8, 1972); see also In re Mutual Series Fund, Inc., SEC No Action

Letter, 1995 WL 693394, *7 (Nov. 7, 1995) (The SEC has "recognized that a series is the

functional equivalent of a separate investment company and [has] concluded that an individual

series should be deemed a separate investment company in applying the various limitations and

restrictions imposed by the 1940 Act . . . ."). Thus, plaintiffs' argument regarding the structure

of mutual funds fails.

**B.      Plaintiffs Must Establish Standing Now, Without Regard to Class
          Certification Principles.**

        Lastly, plaintiffs argue that defendants' arguments are really "class certification"

arguments to be addressed at a later stage. But, as set forth in defendants' opening

memorandum, a plaintiff must establish Article III standing for each claim he or she brings --

simply having one claim against a defendant does not provide standing to pursue other claims

against that defendant or other defendants. Prado-Steinman v. Bush, 221 F.3d 1266, 1280 (11th

Cir. 2000). As this Court has explained: "Rule 23 cannot be said to have broadened the concept

of standing. . . . A plaintiff who lacks standing to sue a defendant [cannot] acquire such status

through class representation." Chevalier v. Baird Savings Assoc., 66 F.R.D. 105, 109 (E.D. Pa.

1975); see also Weiner v. Bank of King of Prussia, 358 F. Supp. 684, 694-95 (E.D. Pa. 1973)

("The plaintiff's standing to bring an action . . . must be established independently of Federal

Rule of Civil Procedure 23").

        In the mutual fund context, these principles mean that a plaintiff cannot make

claims relating to funds not owned by the plaintiff. In Kauffman, 434 F.2d 727, for instance, the

Third Circuit held that a plaintiff who owned shares in only four funds lacked standing to bring

derivative claims on behalf of 65 funds.  Id. at 737.  Other courts have reached similar

conclusions.  In re Eaton Vance Corp. Sec. Litig., 219 F.R.D. 38 (D. Mass. 2003) (precluding

named plaintiffs from asserting claims on behalf of shareholders who had invested in the same

fund family as the named plaintiffs, though not the same funds); In re Value Line Special

Situations Fund Litig., No. M 19-103(CHT), 1974 WL 412, at *8 (S.D.N.Y. June 13, 1974)

(dismissing shareholder's derivative claims on behalf of investment companies in which she did

not hold shares).[9]

       Because plaintiffs apparently owned shares in only three of the funds -- the

Gartmore Total Return Fund, the Nationwide Fund, and the Gartmore U.S. Growth Leaders

Long-Short Fund -- they may, at most, bring claims regarding only those three funds.  Thus, all

claims regarding funds other than those three funds should be dismissed.

---

[9]    Application of the case upon which plaintiffs primarily rely, Fallick v Nationwide Mutual
Insurance Company, 162 F.3d 410 (6th Cir. 1998), was expressly rejected in the mutual
fund context.  See In re Eaton Vance Sec. Litig., 220 F.R.D. 162, 168-69 (D. Mass.
2004).  The Eaton Vance court noted, first, that many of the cases Fallick cited did not
even analyze Article III standing.  Id.  The court also noted that circuit court precedent
regarding ERISA -- a statute not at issue here -- was an important factor in the Fallick
court's determination.  Id.

## CONCLUSION

For the foregoing reasons, as well as those reasons set forth in the Memorandum of Law in Support of the Gartmore Defendant's Motion to Dismiss, the complaint should be dismissed with prejudice.

Respectfully Submitted,

Robert C. Heim
Michael S. Doluisio
Scott A. Thompson
Kristina C. Evans
Dechert LLP
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, PA 19103
(215) 994-4000

Attorneys for the Gartmore Defendants

Dated: May 24, 2005

16

# EXHIBIT "A"

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

LOREN CHAMBERLAIN, *on behalf of himself*
*and all other similarly situated common*
*shareholders of Aberdeen Global Income Fund, Inc.,*

RICHARD POTAPCHUK, *on behalf of himself*
*and all other similarly situated common*
*shareholders of Aberdeen Asia-Pacific Income Fund, Inc.*

Plaintiffs,                                           02 CV 5870 (SJ)

- against -                                            ORDER

ABERDEEN ASSET MANAGEMENT LIMITED,
ABERDEEN ASSET MANAGERS (C.I.) LIMITED

Defendants.
-------------------------------------------------------------X

A P P E A R A N C E S :

WECHSLER HARWOOD HALEBIAN &
FEFFER LLP
488 Madison Avenue, 8th Floor
New York, NY 10022
By:    Joel Carl Feffer, Nadeem Faruqi
Attorneys for Plaintiffs

DECHERT LLP
30 Rockefeller Plaza
New York, NY 10112
By:    Melvin A. Schwarz
Attorney for Defendants

JOHNSON, Senior District Judge:

On January 21, 2005 this Court issued a Memorandum and Order granting

Defendants' Motion to Dismiss based on a finding that there is no private right of action

1

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★          APR 1 2 2005          ★

P.M. _____
TIME A.M. _____

under Section 36(a) of the Investment Company Act.  Plaintiffs subsequently appealed this decision to the Second Circuit, but then withdrew the appeal in order to restore jurisdiction to this Court to consider a joint Motion to Vacate the Judgment by both parties pursuant to Federal Rule of Civil Procedure 60(b).  (Stip. Withdrawing Appeal at 1.)  The reason for the parties' request is that an order vacating the previous decision is a precondition to settlement, demanded by Plaintiffs.  (Mem. Law Supp. Motion to Vacate at 3.)

Despite the public interest in preserving precedent, vacatur is authorized in order to permit settlement to proceed, particularly where the victor as well as the losing party is in agreement that vacatur would be desirable.  See Major League Baseball Properties, Inc. v. Pacific Trading Cards, Inc., 150 F.3d 149 (2d Cir. 1998).  The Court therefore grants the Rule 60(b) Motion, but notes that this does not constitute a reconsideration of the merits of the case or a negation of the substance of the previously issued Order; rather, the Motion is granted simply in order to permit the parties to proceed to settlement.

The previously issued Order is hereby VACATED.  The parties are directed to file a proposed order of settlement and discontinuance within one month.


SO ORDERED.

Dated:  April 6, 2005
        Brooklyn, NY

                                        s/SJ
                                        _____
                                        Senior U.S.D.J.

2

## CERTIFICATE OF SERVICE

I, Michael S. Doluisio, do hereby certify that on May 24, 2005, I caused a true and correct copy of the Reply Memorandum of Law in Support of the Gartmore Defendants' Motion to Dismiss to be served upon the following by Facsimile and Federal Express:

Marc L. Ackerman
BRODSKY & SMITH, LLC
Two Bala Plaza, Suite 602
Bala Cynwyd, PA 19004
(610) 667-6200
(610) 667-9029 (fax)

Randall K. Pulliam
BARON & BUDD, P.C.
3102 Oak Lawn Ave.
Suite 1100
Dallas, Texas 75219
(214) 521-3605
(214) 520-1181 (fax)

J. Allen Carney
Hank Bates
CAULEY BOWMAN CARNEY & WILLIAMS, LLP
11311 Arcade Dr.
Suite 200
Little Rock, Arkansas 72212
(501) 312-8500
(501) 312-8505 (fax)

*Attorneys for Plaintiffs*

_____
Michael S. Doluisio, Esquire